Adam S. Cashman, Esq. (SBN: 255063)
cashman@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

*Attorney for Petitioner Maplebear Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAPLEBEAR INC. d/b/a INSTACART,<br><br>Petitioner,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Respondent. | Case No. 26-mc-80136<br><br>Rel. Case No. 2:21-cv-00898-RSL (W.D. Wash.)<br><br>**PETITIONER MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:<br>Time:<br>Location:<br>Judge: |

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION .......................................................................................................... 2

BACKGROUND ............................................................................................................ 3

      A.    Instacart's Business .................................................................................. 3

      B.    Dec. 2024–July 2025: Initial Subpoena Discussions............................... 4

      C.    July 2025–present: Relevant Procedural History of the *Greenberg* Action ........... 5

          1.    The *Greenberg* Court's July 2025 Discovery Orders............................... 5

          2.    Amazon's Subsequent Motions to Compel Discovery ............................. 7

      D.    Nov. 2025–present: Amazon's Renewed and Expanded Demands on Instacart ....... 7

LEGAL STANDARD ..................................................................................................... 10

ARGUMENT ................................................................................................................. 11

I.    THE COURT MUST QUASH AMAZON'S SUBPOENA BECAUSE IT IMPOSES AN UNDUE BURDEN ON NON-PARTY INSTACART................................................. 11

    A.    Amazon's Subpoena Is Impermissibly Overbroad ................................. 12

    B.    The Expansive Scope of the Demands Imposes an Undue Burden on Instacart ....... 14

II.    AMAZON DOES NOT HAVE A SUBSTANTIAL NEED FOR THE INFORMATION IT DEMANDS FROM INSTACART ................................................. 15

    A.    Retailers, not Instacart, Are the Proper Subjects of Amazon's Demands ........... 16

    B.    Demanding this Information from Instacart Is Duplicative................................. 17

III.    THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT DEMANDS THAT INSTACART PRODUCE HIGHLY SENSITIVE COMPETITIVE COMMERCIAL INFORMATION ................................................................................ 18

CONCLUSION............................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airwair Int'l Ltd. v. Zoetop Bus. Co., Ltd.*,
   2021 WL 6091263 (N.D. Cal. Dec. 23, 2021) ............................................................... 16

*American Standard, Inc. v. Pfizer, Inc.*,
   828 F.2d 734 (Fed. Cir. 1987) ...................................................................................... 18

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
   300 F.R.D. 40603 (C.D. Cal. 2014) ...................................................................... 12, 15

*Compaq Comp. Corp. v. Packard Bell Elecs., Inc.*,
   163 F.R.D. 329 (N.D. Cal. 1995) .................................................................... 12, 14, 16

*Dart Indus. Co. v. Westwood Chem. Co.*,
   649 F.2d 646 (9th Cir. 1980) ................................................................................ 10, 15

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
   2019 WL 7313047 (N.D. Cal. Dec. 30, 2019) .............................................................. 10

*Goolsby v. Carrasco*,
   2011 WL 2636099 (E.D. Cal. July 5, 2011) .................................................................. 12

*In re eBay Seller Antitrust Litig.*,
   2009 WL 5205961 (Dec. 23, 2009) ............................................................................... 19

*In re Roman Catholic Archbishop of Portland in Or.*,
   661 F.3d 417 (9th Cir. 2011) ........................................................................................ 11

*Jacoby v. Bd. of Supervisors of Univ. of La. Sys.*,
   709 F. Supp. 3d 1087 (E.D. Cal. Dec. 21, 2023) .......................................................... 17

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
   894 F.2d 1318 (Fed. Cir. 1990) .................................................................................... 19

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) .................................................................... 11, 12, 15

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STAY DISCOVERY

*Natera, Inc. v. Caredx, Inc.*,

  2023 WL 3763808 (N.D. Cal. May 31, 2023) ....................................................... 18, 19

*National Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP*,

  256 F.R.D. 678 (C.D. Cal. 2009) ..................................................................... 18

*OpenTV v. Liberate Techs.*,

  219 F.R.D. 474 (N.D. Cal. 2003) ..................................................................... 14

*Pebble Ltd. Partnership v. EPA*,

  310 F.R.D. 575 (D. Alaska 2015)............................................................... 12, 15, 16

*Stemmelin v. Matterport, Inc.*,

  2023 WL 411354 (N.D. Cal. Jan. 25, 2023) ...................................................... 11, 15

*United States v. C.B.S., Inc.*,

  666 F.2d 364 (9th Cir. 1982)........................................................................ 10

*Verinata Health, Inc. v. Sequenom, Inc.*,

  2014 WL 2582097 (N.D. Cal. June 9, 2014) ......................................................... 18

*VirnetX, Inc. v. Apple Inc.*,

  2014 WL 6979427 (N.D. Cal. Mar. 21, 2014) ....................................................... 11

*Waymo LLC v. Uber Techs., Inc.*,

  2017 WL 2929439 (N.D. Cal. July 7, 2017) ......................................................... 15

**Rules**

Fed. R. Civ. P. 26.................................................................................. 11, 17

Fed. R. Civ. P. 45........................................................................... 10, 11, 12, 18

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STAY DISCOVERY

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on _____, 2026, at _____AM/PM in Courtroom _____ of the above-captioned Court, located at the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, CA 94102, Petitioner Maplebear Inc. d/b/a Instacart (hereinafter "Instacart") will and hereby does move the Court to quash Amazon's subpoena *duces tecum* and for a protective order prohibiting Amazon from enforcing its subpoena *duces tecum* against Instacart.

Pursuant to Federal Rules of Civil Procedure 26 and 45, an order quashing Amazon's subpoena and a protective order are necessary to protect Instacart from being forced to respond to unduly burdensome discovery for which Amazon has no substantial need.

Instacart's Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Adam S. Cashman and the exhibits thereto, the Declaration of Dylan Tonti, the Court's files and records in this action, and upon any further evidence and argument that the Court may receive at or before the hearing.

Dated: May 1, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:   /s/ *Adam S. Cashman*
      Adam S. Cashman

*Attorney for Petitioner Maplebear Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

Petitioner Maplebear Inc. d/b/a Instacart ("Instacart") respectfully submits this memorandum in support of its Motion to Quash Subpoena and for Protective Order as to the subpoena *duces tecum* propounded by Amazon.com, Inc. ("Amazon").

## INTRODUCTION

To defend itself against allegations of unlawful price gouging of consumer goods and food items sold during the COVID-19 pandemic, Amazon blanketed approximately 150 companies with non-party subpoenas, including Instacart. Amazon's goal is "to obtain discovery from other retailers regarding the price and availability of the same or comparable products to the consumer goods and food items available on Amazon.com." Mot. to Compel at 2, *Greenberg v. Amazon.com, Inc.*, No. 2:21-cv-00898-RSL, Dkt. 238 (W.D. Wash. Feb. 3, 2026). Unlike the dozens of retailers Amazon subpoenaed, however, Instacart is a technology company that provides a platform for retailers to sell products to customers for delivery. Instacart does not sell the goods or food items, never takes ownership of them, does not set the prices, and has no physical stores.

The Court should grant Instacart's motion to quash Amazon's subpoena for two reasons: (1) it imposes extraordinary and undue burden on a non-party, and (2) Amazon has no substantial need because it has already obtained the same information from retailers. First, the demands are grossly overbroad on their face. By its plain terms, the subpoena demands production of transaction- and unit-level data for every transaction conducted on Instacart's platform between January 2020 and October 2022, a demand that encompasses hundreds of millions of separate data points and would necessitate a custom-built database just to collect. The Herculean burden of responding would require Instacart to build a custom data extraction tool from scratch and sift through and organize hundreds of terabytes of data, expending significant time, money, and resources. Amazon itself—the world's largest online retailer—has stated that this type of request would be "monstrously burdensome" to fulfill, despite its technical prowess and bottomless resources. No third party should be put to such unreasonable burden. Simply put, this is not ordinary discovery—it requires building a dataset that does not exist.

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

Second, Amazon has no substantial need for the information it seeks. It has already subpoenaed many dozens of retailers seeking the same type of pricing and item availability data its subpoena seeks here, and those efforts have been highly successful. Indeed, as the court overseeing the action noted, Amazon has obtained "860 GBs of pricing, inventory, and other data produced by the 150 retailers Amazon subpoenaed in this litigation and the data Amazon collects as part of its business regarding competitors' pricing, promotions, rebates, etc." (Declaration of Adam S. Cashman ("Cashman Decl."), Ex. 14 (Order Granting in Part Def.'s Mot. to Compel at 2, *Greenberg*, Dkt. 259 (Mar. 30, 2026)).)[1] Amazon has no substantial need to obtain information regarding product sales that it has already sought (and obtained) from the sellers themselves.

Instacart has explained all of this repeatedly, but Amazon has declined to engage with Instacart's objections or identify any relevant information it claims is available only through its third-party subpoena to Instacart. The Court should therefore quash Amazon's subpoena and issue a protective order.

## BACKGROUND

### A.      Instacart's Business

Instacart is a San Francisco-based technology company that provides an online marketplace and enterprise software platform that connects retailers to customers via personal shopping and delivery. (Maplebear Inc., Annual Report (Form 10-K), at 5–6, 10 (Feb. 26, 2026), https://investors.instacart.com/node/10236/html ("Instacart 10-K").) Specifically, Instacart enables customers to virtually shop retailers' brick-and-mortar stores through its platform and provides related services, including order picking, packing, and delivery by its network of contract shoppers. (*See id.* at 5–6, 80.)

Over the thirteen years since its founding, Instacart has powered more than 1.6 billion orders and, as of December 31, 2025, its service reached more than 98% of households in North America. (*Id.* at 5–6.) In 2025 alone, Instacart facilitated 338.8 million orders, connecting its users to over 2,200 retail banners and nearly 100,000 individual store locations. (*Id.* at 64; *One*

---

[1] Unless otherwise indicated, each "Exhibit" cited in this Motion is a citation to the corresponding exhibit to the Declaration of Adam S. Cashman.

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

*Campaign. 100,000 Stores and Beyond. The Instacart Ads Ecosystem Explained*, Instacart (Mar. 26, 2026), https://www.instacart.com/company/instacart-ads/growth-incremental-sales-and-scale.)

Critically, Instacart is not a retailer or direct seller of consumer goods.  Rather, Instacart provides a platform for retailers to display and sell their goods.  Retailers—not Instacart—set the price for those goods.  Consumers select the retailers' goods and put them in a cart, which is communicated to Instacart's shoppers for purchase and delivery.  Instacart does not "control the goods at any time before they are transferred to the end user," nor does it "pre-purchase or otherwise obtain control of the goods" that retailers sell on the Instacart platform.  (Instacart 10-K at 80.)

### B.      Dec. 2024–July 2025: Initial Subpoena Discussions

On December 18, 2024, Amazon served a *subpoena duces tecum* on Instacart in relation to the *Greenberg* Action.  (Ex. 1 ("Amazon Subpoena").)  The Amazon Subpoena stemmed from a class-action lawsuit plaintiffs brought against Amazon alleging unlawful price gouging of consumer goods or food items that Amazon sold during the COVID-19 pandemic.  (*See* Ex. 2 (Second Am. Compl., *Greenberg*, Dkt. 66 (Sept. 20, 2024)).)  Specifically, the named plaintiffs alleged that Amazon unlawfully set prices for goods that the plaintiffs purchased, and they sought to represent a class of "[a]ll persons who purchased any consumer good or food item … on Amazon.com between January 31, 2020 and October 20, 2022."  (*Id.* at 69.)

The Amazon Subpoena seeks sweeping categories of documents and data related to two ostensible categories of products, which Amazon labels "Tier 1" and "Tier 2" products.  Tier 1 refers to products that the individual plaintiffs allegedly purchased—namely bleach, active dry yeast, flea & tick spray, instant or ramen noodles, rice, vegetable glycerin, disinfecting wipes, and distilled water.  (Amazon Subpoena at 2.)  Tier 2 refers to "Your consumer goods and/or food items during the COVID-19 Pandemic, in stores and online"—in other words, ***all*** consumer goods and food items sold by retailers on Instacart, without limitation.  (*Id.* at 7.)  In its initial letter accompanying service of the Subpoena, Amazon stated that Instacart could "limit" its responses "to the Tier 1 requests."  (Ex. 3 (Letter from J. Goldmark to Instacart (Dec. 18, 2024)).)

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

Instacart timely objected to the Amazon Subpoena in its entirety.  Relevant here, Instacart objected both because "Instacart is not a retailer or reseller of products, nor was it during the COVID-19 pandemic" and because Amazon's requests "impose burdens upon Instacart … not permitted by law."  (Ex. 4 (Instacart's Objections and Responses to Subpoena (Jan. 17, 2025)).)  Following Instacart's response and objections, the parties met and conferred.  (Cashman Decl. ¶ 8.)  Instacart again explained that "direct pricing information" from Instacart does not exist because it is "a digital platform that provides customers with the ability to order products from nearby retailers" and does not directly price products itself.  (Ex. 5 (Email from L. Shapiro to N. Valera, Mar. 18, 2025, 1:11 PM).)  Amazon nevertheless requested that Instacart "confirm whether Instacart affects prices of products it offers on its platform, specifically, Tier 1 products." (*Id.* (Email from N. Valera to L. Shapiro, Mar. 21, 2025, 5:57 PM).)  Instacart conducted an internal review and "confirmed that it did not directly affect the price of the Tier 1 products."  (*Id.* (Email from L. Shapiro to N. Valera, Mar. 27, 2025, 3:47 PM).)

In the subsequent months, the parties negotiated over certain requests for production in the subpoena, namely RFPs 1, 4, and 6–7 (relating to Tier 1 products).  On June 4, for example, Amazon sought to discuss for the first time whether Instacart had "documents … 'related to price gouging [or] unusual price increases.'"  (*Id.* (Email from N. Valera to L. Shapiro, June 4, 2025, 7:11 PM).)  Instacart reported that it did not have such documents, something that was forecasted to Amazon given that Instacart does not price the goods and so would not be expected to have policies directed at such issues.  (*Id.* (Email from M. Benavides to N. Valera, July 2, 2025, 11:34 AM).)  Then, from July 18, 2025, to November 11, 2025, Amazon ceased all communication with Instacart.

### C.    July 2025–present: Relevant Procedural History of the *Greenberg* Action

#### 1.    The *Greenberg* Court's July 2025 Discovery Orders

In addition to its subpoena to Instacart, Amazon issued subpoenas "to approximately 150 non-party retailers seeking pricing, cost, inventory, discount, and purchase data" for Tier 1 and Tier 2 products, and "any analyses the retailers performed regarding competitors' prices during the COVID-19 pandemic and any policies/procedures/actions related to price gouging or health and

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

safety." (Ex. 11 (Order Granting in Part Aldi's Motion to Quash at 1–2, *Greenberg*, Dkt. 178 (July 18, 2025) ("Aldi Order")).) One of those retailers, Aldi Inc., a "limited-assortment retail grocery chain," moved to quash Amazon's subpoena, arguing, as relevant here, that "it does not carry most of the brands Amazon carries," meaning that the price at which Aldi offered off-brand products would be irrelevant, and "the production would be unduly burdensome." (*Id.* at 2.) In Amazon's response, it, too, conceded that "conducting discovery on every one of the billions of transactions in 'consumer goods' and 'food items' on Amazon.com would be *monstrously burdensome*." (Ex. 10 (Amazon Opp. to Aldi Mot. to Quash at 11, *id.*, Dkt. 136 (May 6, 2025) (emphasis added)).)

The court largely agreed with Aldi. It quashed Amazon's requests for Aldi's "cost data" because "[n]on-party competitors will not be forced to disclose highly confidential data regarding costs and margins to provide additional support for what Amazon already knows." (Aldi Order at 5–6.) It also quashed Amazon's request for Aldi's "inventory data," "transactional data," and "analyses of competitor prices" because Amazon failed to show how the information was relevant and, thus, "any burden or disclosure of [such] confidential information is undue." (*Id.* at 5–6.) The court, however, denied Aldi's motion to quash as to Amazon's requests for (1) the prices at which Aldi retailed its own products from January 2020 through October 2022, and (2) Aldi's policies/procedures/actions related to price gouging and health and safety. (*Id.* at 3–5.)

Even as it sought unduly burdensome cost data from Aldi, Amazon was fighting to evade such a production itself as a *party* in the *Greenberg* action. (*See Greenberg*, Dkts. 78, 177.) In a motion for protective order, Amazon sought to limit the plaintiffs' scope of discovery to Amazon's Tier 1 product data only, calling the burden to provide data related to Tier 2 products "*immense and unjustifiable*." (Ex. 12 (Mot. for Protective Order at 9, *id.*, Dkt. 78 (Dec. 4, 2024) (emphasis added)).) Specifically, it claimed that plaintiffs' request for "*all* products and transactions on Amazon.com during an eight-year period" was overbroad because "[t]here are *tens of billions* of these transactions, and virtually all of them are irrelevant to Plaintiffs' claims." (*Id.* at 1 (emphasis in original).) On July 18, 2025, the same date of the Aldi Order, the *Greenberg* Court denied Amazon's motion and ordered Amazon to produce data related to both Tier 1 and Tier 2 products

because, in part, Amazon had "exclusive access" to that information. (Ex. 13 (Order Denying Mot. for Protective Order at 5, *id.*, Dkt. 177 (July 18, 2025)).)

### 2. Amazon's Subsequent Motions to Compel Discovery

In the ensuing months, Amazon appears to have continued to obtain information responsive to its many third-party subpoenas. Amazon also moved to compel the individual plaintiffs in *Greenberg* to produce, *inter alia*, purchase information for goods the plaintiffs purchased "from other on-line retailers that they did not also purchase on Amazon.com." (Ex. 14 (Order Granting in Part Def.'s Mot. to Compel at 2, *id.*, Dkt. 259 (Mar. 30, 2026)).) The *Greenberg* Court recently denied Amazon's request, holding that the information "is already in defendant's possession through the 860 GBs of pricing, inventory, and other data produced by the 150 retailers Amazon subpoenaed in this litigation and the data Amazon collects as part of its business regarding competitors' pricing, promotions, rebates, etc." (*Id.*)

### D. Nov. 2025–present: Amazon's Renewed and Expanded Demands on Instacart

On November 11, 2025—more than four months after Amazon had last communicated with Instacart—Amazon sent Instacart a letter claiming for the first time that, in connection with RFP Nos. 10 and 13, it now sought the full transaction history for the Tier 2 product discovery, i.e., every consumer product and food item sold on the entirety of the Instacart platform over a 33-month period. (Ex. 6 (Letter from J. Goldmark to M. Benavides (Nov. 11, 2025)).) Amazon did not limit the demand to just the price of the items—which would impose an inordinate and unjustified burden alone—but also requested ten separate categories of transaction- and unit-level data for every consumer and food product sold on Instacart's platform between January 31, 2020, and October 20, 2022. (*Id.* (relying on RFP 13).) That "transaction-level data," according to Amazon, must include, for example, "[t]ransaction date," "[s]tore location," "[n]et unit price," and "[u]nits sold." (*Id.*) Confusingly, Amazon premised its demand on the Aldi Order, where the court observed that *retailers'* pricing information is relevant to Amazon's defenses, *see id.* (citing Aldi Order at 5), while conceding in the email accompanying the letter "that Instacart does not set pricing for third parties' products" listed on Instacart's platform. (*See* Ex. 5 (Email from N. Valera to M. Benavides, Nov. 12, 2025, 7:55 AM).) Amazon did not pursue any further response from

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

Instacart as to the remaining RFPs in its Subpoena, all of which Amazon previously indicated were satisfactorily addressed by Instacart through the meet-and-confer process.

The parties met and conferred again on February 3 and February 24, 2026. (Cashman Decl. ¶ 11.) At those meetings, Amazon confirmed that it was seeking the same categories of transaction- and unit-level data for "all consumer goods or food items" sold on Instacart's platform during the 33-month period. (Ex. 5 (Email from N. Valera to M. Benavides, Feb. 3, 2026, 5:00 PM; Email from N. Valera to M. Benavides, Feb. 25, 2026, 3:44 PM).) Amazon also noted that it was "in the process of compelling other third parties" to produce similar data. (*Id.*) Moreover, during those discussions, Instacart agreed to provide additional technical information regarding data storage and accessibility to the information Amazon sought—that is, to crystalize the enormous burden this request imposed on Instacart. (*Id.*) Instacart also confirmed that it did not have any price-gouging policies in place. (*Id.*; Cashman Decl. ¶ 11.) Amazon, for its part, agreed to provide a narrowed proposal. (*Id.*)

On April 1, 2026, Instacart delivered on its promise and explained that its engineering and data teams would have to undergo an extraordinarily large and time- and resource-intensive custom-engineering operation to extract and produce the data Amazon was demanding. (*Id.* (Email from M. Benavides to K. Cox, Apr. 1, 2026, 10:48 AM).) Specifically, Instacart explained that the information Amazon was seeking cannot be extracted with an existing tool or program, and that Instacart's engineers would therefore have to build one from scratch. (*Id.*; *see* Declaration of Dylan Tonti ("Tonti Decl.") ¶¶ 6–11).) That process would also require iterative testing and refinement to ensure accuracy and, because the relevant data sets reside in multiple independent storage blocks within Instacart's systems, the program would need to be run repeatedly over subsets of the databases that are of a size that can be processed. (*Id.*) Moreover, even after extracting the data, Instacart's engineers would have to conduct further technical work to convert the data to the fields Amazon has demanded because Instacart does not maintain the exact corresponding data fields. (*Id.*) And after all that, Instacart's engineers would need to compile and check the output for quality control. (*Id.*) That process would consume weeks of dedicated engineering resources to comb through hundreds of terabytes of data. (*Id.*)

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

The next day, Amazon responded via letter, reiterating its maximalist demand for full compliance with all production demands, and threatening a motion to compel. (Ex. 7 (Letter from J. Freed to M. Benavides (Apr. 2, 2026)).) Despite its claim that it would consider narrowing the scope of its requests, Amazon simply referred back to its requests "in the subpoena and our prior correspondence," proposed no modification to the ten categories of transaction- and unit-level data referenced in its November 2025 letter, and provided no substantive response to any of the technical constraints that Instacart had identified. (*Id.*) Instead, Amazon once more relied on the (inapposite) Aldi Order. Moreover, Amazon asserted—without explanation—that Instacart's representation about its data architecture was a "straw man," speculated that the data "already exists, even if in multiple 'blocks,'" and surmised that because Instacart had acquired a retail-pricing optimization tool called "Eversight" (which Instacart acquired *after* the relevant time period, (Tonti Decl. ¶ 13)), Instacart must be "adept at price analysis" and thus could comply without significant burden. (Ex. 7 (Ltr. from J. Freed to M. Benavides (Apr. 2, 2026).)

Instacart responded by letter on April 15, 2026, requesting clarification of Amazon's contradictory positions. Instacart reiterated its objections, explaining that the third-party retailers were best positioned "to explain any price fluctuations, discounts, promotions, or markups." (Ex. 8 (Letter from M. Benavides to J. Freed (Apr. 15, 2026)).) Instacart again emphasized the "Herculean technical burden of Amazon's demand" and proposed a further meet and confer during the week of April 27, 2026, to find, as Amazon put it, "a minimally burdensome way for it to get data from Instacart." (*Id.*)

On April 28, 2026, Amazon ignored the request to arrange a voice-to-voice meet and confer and instead responded with another letter demanding full compliance with its requests within three days. (Ex. 9 (Ltr. from J. Freed to M. Benavides (Apr. 28, 2026)).) As to the data Amazon seeks, for the first time, Amazon (1) blamed Instacart for failing to "propose[] solutions" that would narrow Amazon's requests, and (2) asserted that it asked only for "data sufficient to show the price and availability of consumer goods and food items sold on Instacart's platform." (*Id.*) What is more, Amazon also sought to recast its repeated demands for transactional-level data by asserting it had merely "suggested transactional-level data as a possible method" "to satisfy [Instacart's]

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

obligations under the Subpoena." (*Id.*)  In the same letter, however, Amazon repeatedly referred back to the same categorical subpoena requests for transaction-level data that have been at issue for more than a year.  Those categories include "[t]ransaction date," "[s]tore location," "[u]nits sold," and "[n]et unit price."  (Ex. 6 (Nov. 2025 Ltr.).)

As for Amazon's request for policies related to price-gouging, Instacart has repeatedly confirmed that it is not a seller and does not set prices, so does not have policies regarding those issues.  (*See* Ex. 5 (Email from N. Valera to M. Benavides, Feb. 25, 2026, 3:44 PM).)  And Instacart confirms again here that it does not have policies or communications relating to price gouging for either Tier 1 or Tier 2 products in response to RFPs 6 and 7 (Tier 1), and 15 and 16 (Tier 2). (Cashman Decl. ¶¶ 11, 16.)

## LEGAL STANDARD

The Ninth Circuit has long held that non-parties subject to discovery requests deserve extra protection from the courts.  *See United States v. C.B.S., Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982); *see also Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("[T]here appear to be quite strong considerations indicating that discovery would be … more limited to protect [non-]parties from harassment, inconvenience, or disclosure of confidential documents."). This is true because "[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *C.B.S., Inc.*, 666 F.2d at 371–72.

Rule 45 permits parties in a suit to subpoena non-parties to obtain discovery.  "The scope of discovery through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b)." *Genus Lifesciences Inc. v. Lannett Co., Inc.*, Case No. 3:18-cv-07603-WHO, 2019 WL 7313047, at *3 (N.D. Cal. Dec. 30, 2019) (citation omitted).  A party, however, must "take reasonable steps to avoid imposing undue burden or expense on a [non-party] subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

Furthermore, Rule 45(d)(3)(A), upon timely motion, requires courts to "quash or modify a subpoena" if it, for example "subjects a person to undue burden" or "requires disclosure of privileged or other protected matter.  Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv).  Underscoring protection

for non-parties, courts in this district have held that "[o]n a Rule 45 motion to quash a subpoena, the moving party has the burden of persuasion …, but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *VirnetX, Inc. v. Apple Inc.*, No. 3:14-mc-80013, 2014 WL 6979427, at *2 (N.D. Cal. Mar. 21, 2014).

Rule 26 reinforces such constraints. A court must limit discovery that can be obtained from another source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). The court must also limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). And, upon a showing of good cause—for example, where a party is subjected to "undue burden"—the court may enter a protective order "forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(i)(A); *see also In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (upholding protective order upon showing of good cause).

# ARGUMENT

Contrary to its obligations, Amazon has shown no regard for the breadth and burden imposed by its subpoena and has never acknowledged its duty to tailor discovery in light of Instacart's third-party status. Indeed, Amazon's persistence in demanding full compliance with a discovery demand imposing burdens far greater than those it elsewhere characterized as "monstrous" exemplifies its approach here.

The Court should quash Amazon's subpoena because the exceptionally large sweep of the demand is impermissible and unreasonable, especially because Amazon has not established a significant need for the data and which is more readily available from less burdensome sources.

## I.    THE COURT MUST QUASH AMAZON'S SUBPOENA BECAUSE IT IMPOSES AN UNDUE BURDEN ON NON-PARTY INSTACART

"[A]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Stemmelin v. Matterport, Inc.*, No. C 20-04168 WHA, 2023 WL 411354, at *2 (N.D. Cal. Jan. 25, 2023) (quoting *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)). "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a

Rule 45 inquiry. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409–10 (C.D. Cal. 2014).

Where the "burden … in complying with the subpoena would be great," courts quash subpoenas or issue protective orders. *Id.* (holding that "the discovery standards under Rule 26 that are incorporated by Rule 45" require courts to "quash or modify a subpoena that … subjects a person to undue burden"); *see also Pebble Ltd. Partnership v. EPA*, 310 F.R.D. 575, 581 (D. Alaska 2015) (quashing subpoena where requests were "unreasonably broad" and involve communications with dozens of other parties across multiple years). Relevant to the burden analysis is the "volum[e]" of information sought and the "person-hours" required to comply with the subpoena. *Compaq Comp. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 334 (N.D. Cal. 1995). Furthermore, non-parties are not required to create documents that do not exist simply for the purposes of discovery. *See Goolsby v. Carrasco*, 2011 WL 2636099, at *8–9 (E.D. Cal. July 5, 2011) (denying plaintiff's motion to compel production of documents where plaintiff's request required defendant to "create documents, as opposed to produce already existing document"). Here, because the enormous breadth of Amazon's subpoena imposes such a significant undue burden upon Instacart, the Court should quash the subpoena.

### A.    Amazon's Subpoena Is Impermissibly Overbroad

The Court should quash Amazon's Subpoena because, on its face, it is overly broad and unduly burdensome as to non-party Instacart. *See Moon*, 232 F.R.D. at 636 (quashing a subpoena that is "overbroad on its face and exceeds the bounds of fair discovery" because it sought years of information regarding the nonparty's "commercial business with other nonparties"). Amazon's subpoena seeks transaction- and unit-level data for *every* consumer good and food item purchased from *any* of the thousands of third-party retailers on the Instacart platform over a period of nearly three years. (*See* Ex. 6 (Nov. 11, 2025 Letter).) As Instacart explained to Amazon, this demand would require Instacart to build a system to extract and produce hundreds of millions of data points from multiple separate databases that together comprise hundreds of *terabytes* of data. (Ex. 5 (Email from M. Benavides to K. Cox, Apr. 1, 2026, 10:48 AM); *see* Tonti Decl. ¶¶ 5–11.)

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

Amazon's demands do not stop there. As stated in its Subpoena (*see* RFP 13, Amazon Subpoena at 7) and repeated most recently in Amazon's November 11 letter, (*see* Ex. 6 (Nov. 11, 2025 Ltr.),) Amazon's actual demand is for 13 separate categories of unit-level data for *each* of the millions of transactions it seeks, including unit SKU, price, and discount. As Instacart explained to Amazon, some of these categories do not map onto any data that Instacart collects or retains, while other categories would require Instacart to interpret and reconfigure its data to conform to the demands. (Ex. 5 (Email from M. Benavides to K. Cox, Apr. 1, 2026, 10:48 AM).) If Instacart were able to devise a way to collect the demanded data from its multiple databases, that data set would be overwhelmingly difficult to produce, as it would contain hundreds of millions of order-item rows across tens of thousands of retailer storefronts. (*See id.*; Tonti Decl. ¶¶ 6–7.) To put that number in perspective, Amazon's collection of data from the approximately 150 retailers it has subpoenaed in the *Greenberg* action only adds up to a grand total of "860 GBs of pricing, inventory, and other data." (Ex. 14 (Order Granting in Part Def.'s Mot. to Compel at 2, *Greenberg*, Dkt. 259 (Mar. 30, 2026)).) In other words, Amazon seeks the exact "monstrously burdensome" production from a non-party that Amazon itself found too burdensome for a party to the litigation. (*See* Ex. 10 (Amazon's Opp. to Aldi Mot. to Quash at 11, Dkt. 136 (May 6, 2025)).)

In a late concession, Amazon attempted to reframe, but not reduce, the scope of its demand. On April 28, 2026, Amazon claimed the subpoena did not necessarily require production of all transaction data, but could be satisfied by production of documents "sufficient to show the price and availability of all consumer goods and food items sold on Instacart's platform" for nearly three years. (Ex. 9 (April 28, 2026 Ltr.)). Instacart, however, does not maintain cost averages or other documents "sufficient to show" item price and availability. Generating this information from scratch, then, would require the same burdensome data extraction exercise for millions of transactions described herein. (Tonti Decl. ¶¶ 6–9, 12.) Indeed, in certain respects this would impose an even ***greater*** burden, as it would first require Instacart to pull the entirety of the dataset, and then develop a tool to catalogue representative prices and availability of all the items sold on its platform. (*Id.* ¶ 12.)

**B.      The Expansive Scope of the Demands Imposes an Undue Burden on Instacart**

The Court should quash the subpoena because Amazon's expansive demands for data impose an undue burden on Instacart.  The burden is multifaceted.  First, as Amazon itself argued, to meet the onerous demands, Instacart will need to invest significant resources and time to identify, collect, and configure hundreds of terabytes of data into the formats Amazon demands.  In discovery disputes, "whether production of [such] documents is unduly burdensome … turns primarily on whether it is kept in an accessible or inaccessible format." *OpenTV v. Liberate Techs.*, 219 F.R.D. 474, 476 (N.D. Cal. 2003) (quoting *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003)); *see also Compaq*, 163 F.R.D. at 334 (considering the number of "person-hours" required to comply with the subpoena).  Here, Instacart does not keep the data demanded in a readily accessible format, nor does it maintain data categories that align with Amazon's demands.

As Instacart operations manager Dylan Tonti confirms, the data that Amazon seeks does not exist in a downloadable format, nor does Instacart have a ready-made mechanism to obtain platform-wide, item-level data at the scale Amazon requests.  (Tonti Decl. ¶ 7.)  Instacart's engineers would thus need to create a custom extraction mechanism—including scoping, building, running, and validating the mechanism—to pull 33 months of platform-wide transactions comprised of hundreds of millions of order-item rows. (*Id.* ¶¶ 8–12.)

The burden does not stop there.  Even after creating the custom mechanism to extract the data, Instacart's engineers would need to run the extraction mechanism in repeated segments because the data set is so large—hundreds of terabytes—so it cannot be maintained single block. (*Id.* ¶ 9.)  After repeatedly running the extraction program, Instacart would have to monitor and validate each extraction.  (*Id.*)

After the data is extracted, more work would remain.  In the ordinary course, Instacart does not maintain retailer-side data fields that map onto the thirteen categories identified in Amazon's subpoena (*see* RFP 13, Amazon Subpoena at 7) so it would have to use additional time and resources to convert that data—to the extent Instacart even has it—to conform to Amazon's requested categories.  (Tonti Decl. ¶ 10.)  All of this would require weeks of dedicated work by Instacart's data team, thereby diverting those resources away from other company projects and

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

priorities. (*Id.* ¶ 11.) Such a burden far exceeds what Instacart may reasonably be expected to bear within the scope of reasonably tailored non-party discovery.

## II.    AMAZON DOES NOT HAVE A SUBSTANTIAL NEED FOR THE INFORMATION IT DEMANDS FROM INSTACART

The consumer product pricing data that Amazon seeks is *per se* commercial information, requiring a substantial need for its production. Once a non-party shows that a subpoena is targeting its "commercial information," the burden shifts to the requesting party to "show a substantial need for the testimony or material that cannot be otherwise met without undue hardship." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017) (citation omitted). "While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a non-party is the target of discovery." *Dart*, 649 F.2d at 649. If producing the material will cause a third-party undue hardship or burden to a degree that outweighs the party's need, the third party should be excused from shouldering that burden. "[A]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Stemmelin*, 2023 WL 411354, at *2 (quoting *Moon*, 232 F.R.D. at 637). That evaluation requires courts to "consider … the relevance of the requested information," *id.* (quoting *Amini Innovation*, 300 F.R.D. at 409–10), whether there exists "a more convenient source of the information" requested, *Pebble Ltd.*, 310 F.R.D. at 582, and whether the information sought would "be cumulative and duplicative," *id.* at 581.

Amazon has not—and cannot—demonstrate that it has a substantial need for Instacart's data. Nor can Amazon show that it has not and cannot seek the data it needs from other, less burdensome sources. Amazon seeks information relevant to its defense against allegations of unlawful price gouging of consumer goods and food items that Amazon, as an online retailer, sold during the COVID-19 pandemic. Information relevant to such a defense would logically come from other *retailers* that set the prices for their goods—not Instacart, a technology company that does not sell or set prices for any of the products that retailers list on its platform. Moreover, as the *Greenberg* Court noted, Amazon has already obtained 860 gigabytes worth of the information it seeks directly from retailers. (Ex. 14 (Order Granting in Part Def.'s Mot. to Compel at 2,

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

*Greenberg.*, Dkt. 259 (Mar. 30, 2026).)  By seeking secondhand and duplicative price information from Instacart, Amazon is knocking on the wrong door.

### A.    Retailers, not Instacart, Are the Proper Subjects of Amazon's Demands

One of the ways in which Amazon may defend itself against claims of unlawful price gouging is by comparing the prices *it* set to the prices that *other retailers* set.  (*See* Aldi Order at 1.)  "'[I]f the sought-after documents are not relevant … then any burden at all that might be imposed would be, by definition, undue.'" *Airwair Int'l Ltd. v. Zoetop Bus. Co., Ltd.*, 2021 WL 6091263, at*2 (N.D. Cal. Dec. 23, 2021) (quoting *Compaq*, 163 F.R.D. at 335–36).  However, there can be no substantial need for information where there exists "a more convenient source of the information." *Pebble Ltd.*, 310 F.R.D. at 582.

Here, Instacart is not the custodian of data relevant to Amazon's defenses.  The retailers— each of which operates its own storefront, determines its own pricing and inventory, and receives payment for the goods sold—are the relevant custodians and the proper targets of the data Amazon seeks.  Not only that, the retailers have primary access to the underlying data relevant to each transaction, including the prices at which they acquired and sold their inventory during the pandemic.  Indeed, when the *Greenberg* Court denied Amazon's motion for a protective order to prevent disclosure of information pertaining to all consumer goods and food items, the Court did so, at least in part, because Amazon had "exclusive access" to that information.  (Ex. 13 (Order Denying Mot. for Protective Order, *Greenberg*, Dkt. 177 (July 18, 2025)).)

Nor does Amazon's argument that Instacart possesses "unique" data, such as "the final price of these consumer goods and food items sold to consumers on its platform, specifically, applicable taxes, local fees, and customer fees," move the needle.  (Ex. 7 (Apr. 2, 2026 Ltr.).)  The *Greenberg* court quashed transaction-level data with respect to Aldi.  Although the court found that retailer pricing data was relevant, the court held that Amazon failed to show how Aldi's "transactional data," was needed "to defend itself from plaintiffs' claims." Aldi Order at 6.  The same is true here. Amazon's defense turns on the price at which the *retailer* offered the same or similar goods, and the retailers undisputedly are the primary parties in possession of that information.  The additional information Amazon claims to seek from Instacart—such as delivery

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

fees or other transaction-level charges—does not materially advance that analysis. At most, it reflects ancillary costs associated with a different purchasing channel, not the underlying price of the goods themselves. Indeed, in response to Aldi's motion to quash, Amazon attempted to justify its demand for cost data arguing that it would help explain its increased prices. The court rejected that argument, holding that "[i]f increased costs were to blame for the higher prices Amazon charged during the pandemic, Amazon's own cost data would establish that fact. Non-party competitors will not be forced to disclose highly confidential data regarding costs and margins to provide additional support for what Amazon already knows." *Id.*

In addition, Amazon's demand that Instacart produce retailer-origin pricing and transaction data would also create a cascade of confidentiality and coordination issues that Amazon is far better situated to resolve directly with the retailers themselves. Instacart is bound by contract to protect the data of both retailers and consumers. (Instacart 10-K at 24.) Any Instacart production would implicate the proprietary information of each of those retailers, as well as consumers' personal information. Practically, too, Instacart would have to notify and confer with affected retailers about the disclosure of their data. (*See* Aldi Order at 1.) Compliance with Amazon's demands would therefore require Instacart to engage in a lengthy campaign to obtain the consent of every affected party before it could produce any data to Amazon.

Because Instacart's data holds little to no value compared to the tremendous undue burden Amazon's demands will impose upon Instacart, the Court should quash the subpoena.

### B.     Demanding this Information from Instacart Is Duplicative

Amazon already has most or all the information it seeks, thereby rendering its request to Instacart duplicative. Courts routinely "limit discovery otherwise allowed if 'the discovery sought is unreasonably cumulative or duplicative.'" *Jacoby v. Bd. of Supervisors of Univ. of La. Sys.*, 709 F. Supp. 3d 1087, 1090 (E.D. Cal. Dec. 21, 2023) (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)).

Amazon admits that it has already "sought information from literally hundreds of retailers to gather relevant information for Amazon's defenses." (Ex. 5 (Email from N. Valera to M. Benavides, July 18, 2025, 4:05 PM; Aldi Order at 1–2 ("Amazon has … issued subpoenas under Fed. R. Civ. P. 45 to approximately 150 non-party retailers.")).) And the *Greenberg* Court has

directly found that Amazon now has that information.  Specifically, when Amazon moved to compel the individual plaintiffs to produce purchase information for goods "from other on-line retailers that they did not also purchase on Amazon.com," the court denied Amazon's request, holding that the information "is already in defendant's possession." (Ex. 14 (Order Granting in Part Def.'s Mot. to Compel at 2, *id.*, Dkt. 259 (Mar. 30, 2026)).)  Indeed, Amazon has "860 GBs of pricing, inventory, and other data produced by the 150 retailers Amazon subpoenaed in this litigation and the data Amazon collects as part of its business regarding competitors' pricing, promotions, rebates, etc." (*Id.*; *see also* Ex. 15 (Mem. Supp. Mot. for Prelim. Inj. at 2–9, *People of State of Cal. v. Amazon.com, Inc.*, No. CGC-22-601826 (S.F. Sup. Ct. Apr. 17, 2026) (detailing Amazon's alleged price monitoring and enforcement system that systematically tracks competitor prices)).)  Because Amazon has that information, any request to Instacart is duplicative, and the Court should quash the subpoena.

**III.    THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT DEMANDS THAT INSTACART PRODUCE HIGHLY SENSITIVE COMPETITIVE COMMERCIAL INFORMATION**

Finally, the Court should quash the subpoena because Amazon demands that Instacart produce highly sensitive data to a direct competitor that has publicly acknowledged its efforts to track the exact same information.  (*See* Ex. 15 (Mem. Supp. Mot. for Prelim. Inj., *California v. Amazon*).)  That is not a proper use of Rule 45.  "If a Rule 45 subpoena requests 'commercial information,' a court may quash or modify the subpoena." *Natera, Inc. v. Caredx, Inc.*, No. 3:23-mc-80117, 2023 WL 3763808, at *2 (N.D. Cal. May 31, 2023).  "Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor." *Verinata Health, Inc. v. Sequenom, Inc.*, No. 3:12-cv-00865, 2014 WL 2582097, at *3 (N.D. Cal. June 9, 2014) (quoting *Am. Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987)).  "It is clear that … customer lists, vendor lists, and pricing information are often determined to be trade secrets." *Nat. Academy of Rec. Arts & Sci., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 n.4 (C.D. Cal. 2009).

Here, Amazon's requests undoubtedly seek highly sensitive commercial information from a competitor, as they amount to Instacart's comprehensive commercial record of its entire platform

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER

operations, including, *inter alia*, the identity and depth of Instacart's retail partnership, platform scale and transaction volume, geographic market penetration, margin and fee architecture, consumer behavior and demand patterns, supply chain intelligence, and more. In 2009, Amazon presciently argued that it, as a non-party, should not have to "produce some of its most valuable propriety information to [a competitor], even under terms of a protective order." *See* Mot. to Quash Subpoena at 6, *In re eBay Seller Antitrust Litig.*, No. 09-cv-00959, Dkt. 1 (W.D. Wash. July 2, 2009). The court agreed and quashed the subpoena. *See id.*, 2009 WL 5205961, at *1 (Dec. 23, 2009).

That argument holds even stronger today, as Amazon now operates systems specifically designed to collect and deploy competitor retailer pricing data. (*See* Ex. 15 (Mem. Supp. Mot. for Prelim. Inj., *California v. Amazon*).) Amazon's own admissions in that action confirm that the competitive risk posed by producing the requested data to Amazon is grounded in documented reality rather than conjecture. Even if the data comes from 2020–2022, Amazon's sophisticated, advanced infrastructure can still use this historical data to its advantage. The direct competitive risk to Instacart is precisely the sort that warrants court intervention. *See, e.g.*, *Natera*, 2023 WL 3763808, at *6 (N.D. Cal. May 31, 2023) (citing *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990)).

## CONCLUSION

For the foregoing reasons, Instacart respectfully requests that the Court grant this motion in full.

Dated: May 1, 2026

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:  */s/ Adam S. Cashman*
　　　Adam S. Cashman

*Attorney for Petitioner Maplebear Inc.*

MAPLEBEAR INC.'S NOTICE OF MOTION AND MOTION TO QUASH AND FOR PROTECTIVE ORDER