# EXHIBIT 15

ROB BONTA
Attorney General of California
PAULA BLIZZARD (SBN 207920)
Senior Assistant Attorney General
JAMIE MILLER (SBN 271452)
STEPHEN R. SMEREK (SBN 208343)
Supervising Deputy Attorneys General
EMILY C. CURRAN (SBN 293065)
EMILY HUANG (SBN 334040)
NELL G. MOLEY (SBN 295498)
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3565
  Fax:  (415) 703-1107
  E-mail: Jamie.Miller@doj.ca.gov

*Attorneys for Plaintiff and Cross-Defendant*
*The People of the State of California*

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**04/17/2026**
**Clerk of the Court**
BY: JUDITH NUNEZ
**Deputy Clerk**

Exempt from Filing Fees Per
Government Code § 6103

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,**<br><br>Plaintiff/Cross-Defendant,<br><br>v.<br><br>**AMAZON.COM, INC,**<br><br>Defendant/Cross-Complainant. | Case No. CGC-22-601826<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE PEOPLE OF THE STATE OF CALIFORNIA'S MOTION FOR PRELIMINARY INJUNCTION TO ENJOIN AMAZON'S RETAIL PRICE FIXING SCHEME**<br><br>**REDACTED VERSION**<br><br>Date:        July 23, 2026<br>Time:        1:30 p.m.<br>Dept:        304<br>Judge:      Hon. Ethan P. Schulman<br>Action Filed:  September 15, 2022<br>Trial Date:    January 19, 2027 |

**SEALED BY ORDERS OF THE COURT ON APRIL 13, 2026**
**Public--Redacts Materials From Sealed Record**

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................................1

II.   FACTUAL BACKGROUND...................................................................................................1

    A.  Amazon, Its Vendors, and Competing Retailers are Fixing Retail Prices ...................................2

        1.  Amazon, Levi's, and Walmart Agreed on Increased Retail Pricing for Khaki Pants...........2

        2.  Amazon, GlobalOne, and Chewy Agreed on Increased Retail Prices for Pet Treats ..........3

        3.  Amazon and Its Vendor All the Rages Agreed on Increased Retail Pricing at Walmart and Home Depot ...............................................................................................................4

        4.  After Amazon Threatened Vendor Armen Living Due to Lower Prices at Competitors, Armen Living Removed Products from Competing Retailers to Increase Pricing ..............................................................................................................................5

        5.  Amazon Communications Are Replete with Price Fixing.....................................................6

    B.  Amazon's Coerces Vendors into Price Fixing with its Online Retail Competitors....................9

        1.  Amazon Wields Substantial Bargaining Leverage Over Its Vendors in Negotiations .........9

        2.  Amazon Punishes Vendors if They Allow Lower Prices on Other Retailers' Websites....10

    C.  Amazon Conceals Evidence of Price Fixing ............................................................................11

III.  LEGAL STANDARD FOR PRELIMINARY INJUNCTIONS IN CALIFORNIA ......................11

IV.   ARGUMENT .......................................................................................................................12

    A.  The People are Highly Likely to Prevail Because Amazon is Fixing Retail Prices ................12

        1.  Price Fixing in Any Form Is *Per Se* Unlawful Under the Cartwright Act..........................12

        2.  Amazon is Engaged in Price Fixing Under California Law ................................................13

    B.  Amazon Cannot Overcome *IT Corp.*'s Rebuttable Presumption of Public Harm....................14

V.    CONCLUSION....................................................................................................................15

## **TABLE OF AUTHORITIES**

### **CASES**

*BBBB Bonding Corp. v. Caldwell* (2021) 73 Cal.App.5th 349……………………………………14

*Cellular Plus, Inc. v. Superior Court* (1993) 14 Cal.App.4th 1224………………………………..12

*Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998………………………..14

*In Re Cipro Cases I & II* (2015) 61 Cal.4th 116…………………………………………………12

*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63…………………………………………...…12, 14

*Kolling v. Dow Jones & Co.* (1982) 137 Cal.App.3d 709…………………………………………12

*Kunert v. Mission Financial Services Corp.* (2003) 110 Cal.App.4th 242………………………….13

*Mailand v. Burckle* (1978) 20 Cal.3d 367……………………………………………………….1, 12

*Oakland-Alameda County Builders' Exchange v. F.P. Lathrop Constr. Co.*

    (1971) 4 Cal.3d 354………………………………………………………………………12, 14

*People v. Building Maintenance Contractors' Ass'n* (1953) 41 Cal.2d 719………………………...12, 13

*People v. Uber Techs., Inc.* (2020) 56 Cal.App.5th 266……………………………………………..12, 14

*R.E. Spriggs Co. v. Adolph Coors Co.* (1979) 94 Cal.App.3d 419…………………………………..13, 14

*Speegle v. Board of Fire Underwriters of the Pacific* (1946) 29 Cal.2d 34………………………….12

*Water Replenishment Dist. of S. Cal. v. City of Cerritos* (2013) 220 Cal.App.4th 1450………………..12

### **STATUTES**

Bus. & Prof. Code § 16720……………………………………………………………………..12, 14

Bus. & Prof. Code § 16754.5……………………………………………………………………12

## I. INTRODUCTION

The People bring this motion to stop the plainly unlawful conduct that discovery has uncovered: **price fixing**.[1] When faced with a competitor offering a lower price, Amazon does not compete fairly. Instead, Amazon insulates itself from competition by strong-arming its vendors into raising prices offered by its competitors, often with the explicit or implicit agreement of the competing retailer. These are not general discussions about price—these are explicit agreements to increase retail prices, all so Amazon can maintain its profit margins at the expense of consumers.

Evidence developed in discovery reveals that Amazon, its vendors, and competing retailers are fixing retail prices. Time and again, across years and product categories, Amazon reaches out to its vendors and instructs them to "fix" retail prices on competitors' websites, threatening dire consequences if vendors do not comply. Vendors, cowed by Amazon's overwhelming bargaining leverage and fearing punishment, comply—agreeing to raise prices on competitors' websites (often with the awareness and cooperation of the competing retailer) or to remove products from competing websites altogether. The scheme is neither subtle nor complex. It is price fixing, and it should be immediately enjoined.

Price fixing—*i.e.*, "[a]ny combination which tampers with price structures"—is universally condemned under California's Cartwright Act as illegal *per se*. (*See Mailand v. Burckle* (1978) 20 Cal.3d 367, 376 [citation omitted].) By "tampering with prices," Amazon is undermining the bedrock principle that prices "must be determined . . . by the interplay of the economic forces of supply and demand" and not the dictates of a powerful market actor. (*Id.* at 377 [citation omitted].)

Amazon's unlawful conduct must stop. The People respectfully request that Amazon be enjoined from: (1) engaging in explicit price fixing with its vendors and its competitors; (2) communicating with vendors about other retailers' pricing; and (3) coercing its vendors to serve as the go-between with its competitors by demanding money to make Amazon whole for price matching a lower-priced retailer. The People further request that a monitor be installed to ensure Amazon's compliance with the injunction.

## II. FACTUAL BACKGROUND

Amazon, its vendors, and competing retailers are fixing retail prices of products sold to consumers. This price fixing scheme typically begins with Amazon demanding that vendors "fix," "correct," "increase," "raise," or "look into" the prices of products on other retailers' websites. More euphemistically, Amazon instructs vendors to "manage" their "channels" (*i.e.*, other retailers) to increase retail prices. These directives to vendors are backed by the threat of significant penalties for failure to comply—ranging from advertising and promotion restrictions, to demands for financial compensation, to

---

[1] This motion relates exclusively to Amazon's first party retail sales and wholesale relationships.

MEMORANDUM ISO THE PEOPLE'S MOT. FOR PRELIMINARY INJUNCTION
(CGC-22-601826)

the removal of vendors' products from Amazon through the Can't Realize a Profit ("CRaP") mechanism.[2]

These agreements to raise prices can be implemented in multiple ways and often take the form of one or more of the following three price fixing schemes: (1) where Amazon and a competitor are price matching one another,[3] resulting in downward pressure on price, either Amazon or the competitor agrees, through their common vendor, to break a price match on a product by increasing the retail price or making the product temporarily unavailable, so that the other retailer can match the increased market price ("Breaking the Price Match"); (2) a competitor offering a discounted price on a product will increase its retail price at Amazon's request (a request made through the vendor), so that Amazon can then match the increased retail price ("Increasing the Competitor Retail Price"); or (3) the vendor removes a product from a competing retailer who is offering a lower price than Amazon, so that the lower price is no longer available in the market and Amazon then raises its retail price ("Removing the Product").

**A. Amazon, Its Vendors, and Competing Retailers are Fixing Retail Prices**

Below are examples of the three price fixing schemes employed by Amazon, its vendors, and its competitors. These communications are naked agreements on price.

**1. Amazon, Levi's, and Walmart Agreed on Increased Retail Pricing for Khaki Pants**

Amazon, Levi's, and Walmart agreed to fix prices on Easy Khaki Classic pants. This exchange is an example of Breaking the Price Match.

To start, Amazon sent Levi's links to two "styles of concern" due to lower prices on Walmart.com, saying it "hop[ed] these can get resolved over the next few days."[4] The next day, Levi's reported that "I talked to Walmart and they have partnered with us to . . . take Easy Khaki Classic fit back up to ladder SPP price, $29.99 immediately" and provided links to show the increased Walmart price.[5] Hearing no response, Levi's emailed again, repeating that "Walmart's pricing has been updated on the Classic Fit Easy Khaki to $29.99 since yesterday afternoon . . . however the Amazon PDP[6] is still flashing at [the lower price of] $25.47-26.99."[7] Levi's reiterated "***Walmart partnered with [us] to update this as a test for the best interest of the marketplace***. They're looking for an update as soon as possible. I'm really hoping we can show this as a proof case so we can resolve issues going forward."[8] In response, Amazon

---

[2] When Amazon CRaPs a product, it shuts off purchase orders, ultimately making it impossible for customers to buy a product. (*See, e.g.*, Ex. 1 at 104:22-105:21.) Unless otherwise noted, all Exhibit references refer to the Declaration of Nell Moley.

[3] Amazon prices its first-party retail products primarily by matching its competitors' prices. (*See* Ex. 58 (Compl.) ¶ 33; Ex. 2 at 17:19-22, 63:13-64:8, 75:9-22, 76:21-77:2.)

[4] Ex. 3 (CAAGLit-AMZ_06837773) at 781.

[5] *Id.* at 780.

[6] PDP refers to the Product Detail Page.

[7] Ex. 3 (CAAGLit-AMZ_06837773) at 778.

[8] *Ibid.*

MEMORANDUM ISO THE PEOPLE'S MOT. FOR PRELIMINARY INJUNCTION
(CGC-22-601826)

acknowledged that Walmart raised its price and confirmed it had matched that higher price: "the updated pricing of $29.99 is now showing up on [Amazon]."[9] The result of this price fixing agreement was that Walmart and Amazon both increased the price for a specific product to a specific level, as opposed to the lower price that Walmart had been offering.

**2. Amazon, GlobalOne, and Chewy Agreed on Increased Retail Prices for Pet Treats**

Amazon, vendor GlobalOne, and Chewy fixed prices on over ten Canine Naturals pet treat products. This is also an example of Breaking the Price Match, but here, Amazon breaks the price match so that Chewy will match the increased price.

The plan was memorialized in an email from GlobalOne.[10] For its part, Amazon would "artificially take [Canine Naturals] retails up . . . to get Chewy to follow."[11] Then GlobalOne would "reach out to Chewy" to let them know that Amazon was increasing the list pricing and "would ask that [Chewy] follow. If they agree we'd then execute everything."[12] In other words, if Chewy agreed, Amazon would increase its retail list pricing for the Canine Naturals pet treats and Chewy would match the price increase. In response, Amazon insisted on even higher prices and asked if GlobalOne had a "chance to connect with Chewy on timing of executing this."[13]  GlobalOne then asked "[w]hen [] Amazon [would] raise their retail and for how long? I'm working [to] pick a date in early January so we can make sure your competitor [Chewy] follows suite [sic]."[14] Amazon confirmed it would "update the price . . . on 1/5 and hold the price for 24 hours."[15] As promised, on January 5, Amazon emailed GlobalOne with a list of thirteen Canine Naturals pet treat products with the agreed-upon increased list prices, confirming that "[a]ll list prices are updated . . . I've submitted a ticket . . . to override this match [to Chewy] for [24] hours. As you noted, Chewy should be aware of this update and follow suit accordingly."[16]

The plan was realized on January 7. Amazon told GlobalOne that the price match override was in place, and to "let Chewy know to update immediately."[17] That same day, GlobalOne confirmed the "ones that went up on Amazon immediately went up on Chewy ☺. . . Overall this looks like it's working!"[18] The result of Amazon, Chewy and GlobalOne's price fixing agreement was to increase the retail prices of over ten Canine Naturals pet treat products on Amazon and Chewy.

---

[9] *Id.* at 775.
[10] Ex. 4 (CAAGLit-AMZ_07709030) at 036.
[11] *Ibid.*
[12] *Ibid.*
[13] *Ibid.*
[14] *Id.* at 035.
[15] *Ibid.*
[16] *Id.* at 032-033.
[17] *Id.* at 030-031.
[18] *Id.* at 030.

MEMORANDUM ISO THE PEOPLE'S MOT. FOR PRELIMINARY INJUNCTION
(CGC-22-601826)

### 3. Amazon and Its Vendor All the Rages Agreed on Increased Retail Pricing at Walmart and Home Depot

Amazon also fixed prices with a home décor vendor, All the Rages, at Walmart and Home Depot. This exchange illustrates the Increasing the Competitor Retail Price and Removing the Product price fixing schemes.

Here, Amazon demanded that All the Rages pay to make up for its lost profits due to price matching a lower priced competitor for 84 specific products "to keep them selling" on Amazon.[19] Amazon threatened to stop ordering these products from All the Rages if it did not comply.[20] Amazon then told the vendor it should be "talking to different channels" to fix this problem and raise prices in the marketplace.[21] Amazon sent All the Rages a screenshot to a product on Home Depot's website, emphasizing that "even at HD's [Home Depot's] price of $26.99, we still won't be profitable."[22]

Days later, All the Rages confirmed that it had "zeroed out inventory and contacted the retailers to fix the retail and have seen the retail increased for a lot of the items already, such as the one below [on HomeDepot.com] which is now $29.99. . . ."[23] Amazon thanked the vendor for its "quick action," noting that the number of "unprofitable" products decreased.[24] But Amazon later advised that 11 of the 84 products remained problematic and asked the vendor to "work on the pricing issue[s] of these items."[25]

The next day, All the Rages confirmed a retail price increase for yet another product and asked Amazon where it was seeing lower prices at competitors.[26] In the email excerpt below, All the Rages confirmed that Home Depot was out of stock for one table lamp and that they did not see any other retailers at $24.99 for another table lamp.[27] Amazon responded (highlighted) to the vendors' questions, confirming that for the first lamp, Walmart had increased its price from $45.83 to $59.99.[28] For the other lamp, Walmart raised its price from $24.99 to $39.00, so that they were "good now."[29]

Can you check B07DFCLJ78 to see who is being price matched? I think it is Home Depot which is showing out of stock. Walmart was selling at 45.83$ previously, and right now at $59.99

B07DF8VFF5 looks like retail increased.

B07DFJKQ1Y and B07DFGKRF6 - I don't see any other retailers at $24.99 except for Amazon. Again, Walmart was at 24.99 before, now raised to $39, we should be good now.

[19] Ex. 5 (CAAGLit-AMZ_05993124) at 128.
[20] *Ibid.*
[21] *Ibid.*
[22] *Id.* at 127.
[23] *Id.* at 126-127.
[24] *Id.* at 126.
[25] *Id.* at 125.
[26] *Id.* at 124-125.
[27] *Ibid.* [highlighting added for clarity].
[28] *Ibid.*
[29] *Ibid.*

MEMORANDUM ISO THE PEOPLE'S MOT. FOR PRELIMINARY INJUNCTION
(CGC-22-601826)

These exchanges show Amazon and All the Rages agreeing to and raising specific prices for specific products at competing websites. They also show All the Rages "zero[ing] out" inventory on competitors' websites to resolve Amazon's complaint about matching lower competitor prices.

**4.    After Amazon Threatened Vendor Armen Living Due to Lower Prices at Competitors, Armen Living Removed Products from Competing Retailers to Increase Pricing**

In another example of Removing the Product price fixing, Amazon brought four products to furniture vendor Armen Living's attention because competitors were pricing drastically lower.[30] Armen Living promised to "look further into the potential offenders and put them on pause . . . . If the problematic retail does not fix by the end of the week, we will discontinue [these products] from your problematic competition to ensure that Amazon can return to a healthy state with these items."[31] Amazon thanked the vendor for "looking into this matter," but also warned that it would "remove all four of [the products] from [Amazon's] website in the next few days"—immediately before the critical sales days of Black Friday and Cyber Monday—if the pricing issue was not resolved.[32]

After further prodding from Amazon to "manag[e] your sales channels," the vendor responded: "[W]e did in fact remove these items from the sites [other retailers] that are causing the issue. *We have confirmed on our end that these have been removed from the offenders['] sites*. Please let us know if you are still seeing issues on your end."[33] In spite of this, Amazon responded that only one product's price "improved" (*i.e.*, increased), and that the other two products' "prices haven't been changed yet."[34] To provide further clarity, Amazon included a chart outlining the pricing "issues"—places where the price had dropped.[35] In that chart, Amazon was explicit about the prices it expected: the price on the barstool (ASIN B07BSW8GMK) needed to increase from $156.58 to $172.97, and the price on the dining chair (ASIN B01M9K6DU7) needed to increase from $103.56 to $119.99.[36]

Thank you for your action and update. It looks like only 1 ASIN (out of 3) has been improved. The two other ASINs (in yellow), their prices haven't been changed yet. Let me know if you need more time to address this.

| ASIN | Prev. Price | Current Price | Issue |
|---|---|---|---|
| B00YSYTIR0 | 113.99 | 89.66 | Price dropped and still not recover to the original price |
| B07BSW8GMK | 172.97 | 156.58 | Price dropped and still not recover to the original price |
| B01M9K6DU7 | 119.99 | 103.56 | Price dropped and still not recover to the original price |

[30] Ex. 6 (CAAGLit-AMZ_07698118) at 122-123.
[31] *Id.* at 121.
[32] *Ibid.*
[33] *Id.* at 119-120 [emphasis added].
[34] *Id.* at 118.
[35] *Id.* at 118-119 [highlighted and modified for clarity].
[36] *Ibid.*

MEMORANDUM ISO THE PEOPLE'S MOT. FOR PRELIMINARY INJUNCTION
(CGC-22-601826)

The vendor assured Amazon that it would "review all our channels again, this might be coming from a much smaller account instead of a site like Home Depot" and promised to provide an update the next business day.[37] This example shows Amazon and Armen Living agreeing to remove products from competing online retailers so that Amazon can raise its price.

## 5. Amazon Communications Are Replete with Price Fixing

The previous examples of Amazon's price fixing are not outliers. Rather, they are illustrative of countless interactions—spanning years and many different employees and product lines—in which Amazon, vendors, and Amazon's competitors agree to increase and "fix" the prices of products on other retail websites. Amazon's goal is to insulate itself from price competition by preventing lower retail prices in the market. As Amazon told one vendor explicitly: "I am very determined to help you hunt the disrupters in the market."[38]

In the Increasing the Competitor Retail Price method of price fixing, Amazon provides exact details of its competitors' prices and directly asks vendors to "look into" getting the competitors to increase their prices. In one such case, Amazon directed vendor Scotts (a manufacturer of lawn/garden products) to "reach out to the retailer that we are price matching to and have them raise their prices, even if it is just for the 3 days leading up to [Prime Day]."[39] In another example, Amazon sent Hanes (an apparel vendor) links to Target.com and Walmart.com showing lower prices than were on Amazon, and Hanes confirmed that it "reached out to Target and Walmart to have the prices increased."[40] In another exchange, Amazon sent vendor Babyvision (which sells baby apparel) screenshots to Walmart's website, asking if the vendor was "aware of this markdown."[41] Babyvision responded by telling Amazon that "I am working with my pricing team to get the [price] . . . back up to base price from this morning's match," and ultimately removed the product from Walmart "to fix the pricing problem."[42] Amazon then confirmed that it was "working" to get the "correct price back up" and thanked Babyvision for "correcting with Walmart."[43]

In Breaking the Price Match price fixing, Amazon helps vendors to temporarily "break" the price match between Amazon and its competitors to raise prices. Amazon and a competitor will knowingly stop price matching each other, so that one retailer can increase its price, and the other retailer can match to the new, higher price. Thus, both competitors start selling at a higher price, increase their profits, and

---

[37] *Id.* at 118.
[38] Ex. 7 (CAAGLit-AMZ_06691185) at 188.
[39] Ex. 8 (CAAGLit-AMZ_06282053) at 053.
[40] Ex. 9 (CAAGLit-AMZ_08073831) at 831-833.
[41] Ex. 10 (CAAGLit-AMZ_04146424) at 425-426.
[42] *Id.* at 424-425.
[43] Ex. 11 (CAAGLit-AMZ_04146450) at 450.

MEMORANDUM ISO THE PEOPLE'S MOT. FOR PRELIMINARY INJUNCTION
(CGC-22-601826)

consumers pay more. For example, Amazon emailed vendor Allergan to say that it had temporarily suppressed eye drops due to a price match at $13.59, telling the vendor that it would "check the price match regularly throughout the day."[44] In response, Allergan sent a screenshot to Walmart's website at $16.99, stating that "Walmart got their price back up" and asked Amazon to unsuppress the product.[45] Amazon did so, confirming: "Buy box back up at $16.99."[46]

In Removing the Product price fixing, vendors respond to Amazon's demands for increased retail prices by simply removing inventory from other retailers' sites so that the Amazon price will then increase. In response to Amazon suppressing a product because of a lower price at Best Buy, vendor Maxi-Matic (which sells small kitchen appliances) said, "[w]e have put Best Buy out of stock and we are following up w/ them on why they had it at 17.99."[47] Similarly, Amazon asked vendor Skullcandy about whether it was "missing a promo" on wireless earbuds, which were priced lower at Walmart.[48] Skullcandy responded by rendering the item unavailable for purchase at the lower price on Walmart.com.[49] Further examples of these price fixing schemes include:

- Amazon complained to vendor Agrothrive (which sells plant fertilizer) about lower prices at Home Depot. The vendor reported back to Amazon: **"Yes, *just got out of a meeting with the Home Depot manager and she has agreed to raise the prices this time*."**[50]

- Amazon told vendor WBM International (concerning a salt lamp) that "We have a pricing issue that needs to be fixed ASAP," prompting the vendor to reply: "I will fix the price and get back to you" and "We will fix the price by tomorrow."[51] The next day, the vendor confirmed that it submitted new pricing to its other retailers and that the retail prices will be "fixed [increased] with in [sic] 24 hours."[52]

- Amazon asked vendor Linon (which sells furniture/home décor): "Is there anything you can do to address this [price drop] permanently and not let it happen again?"[53] Linon responded by agreeing to remove inventory from the competitor.[54]

- Amazon complained to vendor Westinghouse (which sells portable generators) that it needed higher

---

[44] Ex. 12 (CAAGLit-AMZ_08584057) at 059.
[45] *Id.* at 058.
[46] *Id.* at 057.
[47] Ex. 13 (CAAGLit-AMZ_08439799) at 801 [modified for clarity].
[48] Ex. 14 (CAAGLit-AMZ_09362177) at 180.
[49] *Id.* at 179.
[50] Ex. 15 (CAAGLit-AMZ_07849492) at 492 [emphasis added].
[51] Ex. 16 (CAAGLit-AMZ_08238106) at 106-110.
[52] *Id.* at 106.
[53] Ex. 17 (CAAGLit-AMZ_06749887) at 887.
[54] *Ibid.*

MEMORANDUM ISO THE PEOPLE'S MOT. FOR PRELIMINARY INJUNCTION
(CGC-22-601826)

prices at a competitor, and Westinghouse explained how it was trying to raise prices across the market to avoid being suppressed on Amazon: ***"I'm making efforts to push the market back to a retail that will give you [Amazon] solid headroom***. We definitely don't want this on the CRaP [*i.e.*, suppression] list."[55]

- Amazon complained to vendor Songmic that Wayfair was selling its product (a trash can) for less and the price needed to increase.[56] Songmic explained: "***we urgently asked the channel [Wayfair] to stop running deals for it***."[57]

- Vendor Newell Brands (which owns brands such as Rubbermaid and Paper Mate) told Amazon that its Dymo label maker was "at high risk" of "being shut off for Amazon as it's causing high disruption."[58] In response, Amazon agreed to "temporarily cede the buy box" to "give time for Walmart and Target to raise their prices, which we would then match."[59]

- Amazon told vendor Chefman (which sells kitchen appliances) to "work[] with Target" to reset the retail price for a number of products.[60] Chefman confirmed it "worked with Target and Walmart to get it back up to the proper retail" and asked Amazon if it "could do anything more to help so my work doesn't go in vain." [61] Amazon responded that it had "pushed our system to readjust and we should that [sic] occur today! I can confirm the adjustments on [T]arget on my end as well."[62]

- Amazon told vendor Tractive (which sells GPS pet trackers) that "I am still seeing the [product] at $29.99 due to price matching with competitors. I would highly recommend channel control. Once channels are controlled, please let me know immediately so that I can refresh our system so that we correctly price match [to a higher price]."[63]

- Amazon sent vendor FNI (which sells guitar audio equipment) an email with the subject line "Missing promotion?" along with screenshots of prices at Adorama.com and B&H's website.[64] In response, FNI agreed to work hard "to clean up the channel" and confirmed that it had reached out to Adorama and B&H to increase their prices.[65]

- Amazon emailed vendor Arlo (which sells smart security solutions) about "external price matching"

---

[55] Ex. 18 (CAAGLit-AMZ_06693065) at 072 [emphasis added].
[56] Ex. 19 (CAAGLit-AMZ_07388817) at 818.
[57] *Ibid.* [emphasis added].
[58] Ex. 20 (CAAGLit-AMZ_06668836) at 837.
[59] *Id.* at 837.
[60] Ex. 21 (CAAGLit-AMZ_06347569) at 570-571.
[61] *Id.* at 569.
[62] *Ibid.*
[63] Ex. 22 (CAAGLit-AMZ_07894392) at 392.
[64] Ex. 23 (CAAGLit-AMZ_09936564) at 564-569.
[65] *Id.* at 564.

along with a screenshot to Walmart, noting that its price of $549.93 for a security camera "did not go back up."[66] After Arlo responded that it would "get the below screenshot addressed," Amazon asked that Arlo "get[] this corrected by EOD."[67] The following morning, Arlo sent Amazon a screenshot of Walmart's website selling the product for $649.99, and Amazon thanked the vendor for its "quick action."[68]

- Amazon sent Select Sales a screenshot of the vendor's balance ball for sale on Target.com for $59.99, noting that the price had dropped from $69.99.[69] After the vendor responded that it was "[l]ooking into it," Amazon told the vendor to "[l]et me know when I can push thru a manual crawl (just shoot a text)," and Select Sales agreed.[70]

**B. Amazon's Coerces Vendors into Price Fixing with its Online Retail Competitors**

Amazon's substantial bargaining leverage over vendors enables it to coerce vendors into acting as a go-between for Amazon and its retail competitors to increase retail prices in the market. The price fixing is not driven by the vendors. Rather, Amazon tells vendors what prices it wants to see to maintain its own profitability. Amazon can do this because it is the world's largest, most powerful online retailer, and vendors must comply with Amazon's demands or risk repercussions.

**1. Amazon Wields Substantial Bargaining Leverage Over Its Vendors in Negotiations**

Amazon is a powerhouse in retail e-commerce, with a reported revenue of over $387 billion and an operating income of $24.9 billion in North America alone in 2024.[71] There are over 100 million Amazon Prime members in the United States, with millions more customers shopping on Amazon without a Prime membership.[72]

Due to this unparalleled access to customers, sales on Amazon represent a substantial portion of business for many vendors.[73] To stop conducting business with Amazon is often not an option for vendors. Vendor Babyvision said that if it had to, it would probably "stop[] business with Zulily [Amazon competitor]" because Babyvision's "Amazon business is way more important . . . ."[74] Vendor Arlo said

---

[66] Ex. 24 (CAAGLit-AMZ_04338258) at 259-260.
[67] *Id.* at 259.
[68] *Id.* at 258.
[69] Ex. 25 (CAAGLit-AMZ_09204351) at 351-352.
[70] *Id.* at 351.
[71] Request for Judicial Notice, Ex. A (Amazon.com, Inc.'s 2024 Form 10-K), pp. 24, 27.
[72] Ex. 26 at 122:1-5; Ex. 27 (AMZN-RTL-FTC-14430144) at 149. In approximately 70% of all US households, at least one person has a Prime membership. Ex. 26 at 164:7-166:8; Ex. 27 (AMZN-RTL-FTC-14430144) at 149.
[73] *See* Ex. 28 at 85:17-86:3 [Amazon accounted for nearly 30% of vendor Babyvision's total sales]; Ex. 29 at 23:23-24:4 [Amazon is roughly ███ of Roku's online sales]; Ex. 30 at 28:8-21.
[74] Ex. 28 at 139:15-21.

that if Amazon stopped purchasing its products, it "████████████████████" and "████████████████████████████."[75]

Every negotiation between Amazon and a vendor takes place in the context of these uneven power dynamics. Amazon exercises its leverage over vendors to coerce them to raise prices at Amazon's competitors.

### 2. Amazon Punishes Vendors if They Allow Lower Prices on Other Retailers' Websites

Amazon employs a variety of enforcement mechanisms to pressure its vendors into acting as a go-between to fix the price of goods sold on other retailers' websites. Among the coercive tactics Amazon uses to ensure compliance with its price fixing scheme are GMMs (Guaranteed Minimum Margin Agreements) and Matching Compensation Program (MCP) payments, which penalize vendors monetarily if vendors' products are offered on a competing retailer's site at a price below Amazon's.[76]

In addition to monetary demands, Amazon uses other methods to coerce vendors to increase prices, including threatening to remove products from its website, either through temporary suppression,[77] longer-term CRaP, or permanent de-listing;[78] threatening to block access to promotions like Prime Day, remove access to advertising and other favorable placement on its website; and/or imposing other unfavorable terms related to shipping or returns.[79]

Coercive exchanges with vendors abound in Amazon documents. In one exchange, Amazon suppressed a product with its vendor, Chefman, because Newegg, an Amazon competitor, offered the product at an "unprofitable" (for Amazon) price of $84.99.[80] Chefman told Newegg to "delist the item or raise the retail to [M]SRP," but then Amazon told Chefman that "the next lowest match is at an even bigger retailer [Target] . . . at $91.99 . . . so that still would make us [Amazon] unprofitable."[81] Chefman informed Amazon that it already raised the price on Newegg and that the Target price "will be raised" in

---

[75] Ex. 31 at 308:10-22.

[76] GMMs require vendors to pay Amazon for drops in profitability resulting from a price match. (*See* Ex. 58 (Compl.) ¶ 6; Ex. 32 at 181:18-182:18; Ex. 33 at 103:15-104:10; Ex. 34 at 335:12-25.) MCP payments operate like a GMM but are retroactive. (*See* Ex. 58 (Compl.) ¶¶ 178, 180-181, 200; Ex. 35 at 70:2-14; Ex. 36 at 193:18-194:19.) MCP "opportunities" arise when Amazon experiences "margin degradation driven by a competitor price match." (Ex. 37 at 205:16-206:10; Ex. 38 at 45:1-23; Ex. 39 (CAAGLit-AMZ_05996791) at slide 3; Ex. 40 (CAAGLit-AMZ_08264180) at slide 3; *see also* Ex. 41 (CAAGLit-AMZ_17308358) at 358 ["we are asking for funding to maintain our margin/NetPPM after we price match. But it's really the same thing [as asking for funding to price match]."].)

[77] This is also known as "BOSSing" and is a tool used by Amazon vendor managers. (*See* Ex. 42 at 282:20-283:6; Ex. 35 at 188:4-9.)

[78] Ex. 33 at 210:25-211:17, 215:14-25; Ex. 35 at 188:4-190:1; Ex. 39 (CAAGLit-AMZ_05996791) at slide 17; Ex. 40 (CAAGLit-AMZ_08264180) at slide 9; Ex. 43 (CAAGLit-AMZ_04739026) at 026.

[79] Ex. 39 (CAAGLit-AMZ_05996791) at slide 17; Ex. 40 (CAAGLit-AMZ_08264180) at slide 9.

[80] Ex. 44 (CAAGLit-AMZ_08559908) at 912-913.

[81] *Id.* at 911-912.

the same way.[82] After the price on its competitors' sites increased, Amazon "confirm[ed] the retail has stabilized" and un-suppressed the product on Amazon's website. [83] In another example, Amazon suppressed a product while the vendor "work[ed] to reset street price" and "get[s] other retailers to adjust."[84]

Amazon's message to vendors is clear: Ensure that prices at other retailers stay high or face consequences. Vendors, dependent on Amazon and unable to pay the steep monetary penalties threatened by Amazon or withstand the drastic loss in sales from a suppressed product, respond by turning to one of the three price fixing schemes described above to raise prices across the other channels on which they sell.

### C. Amazon Conceals Evidence of Price Fixing

The full extent of Amazon's unlawful conduct reaches beyond the documentary record. This is because Amazon trains its employees to obscure written evidence of price fixing and to use vague phrases to direct vendors to control market-wide prices. For example, an Amazon pricing training instructs: "do not use email" if "you need to refer to specific example, when negotiating incremental price match funding, or to highlight activities in the channel (driving down NetPPM/ASP)."[85] Similarly, an email to Amazon employees cautions that, even though "legally approved talking points" exist for discussions with vendors about maintaining Amazon's profits, they should "keep in mind that it is often better to have these conversations over the phone."[86] Amazon urges its employees to speak over the phone when discussing pricing and identifying which other retailers Amazon is price matching.[87] In line with this training, an Amazon vendor manager told a vendor that pricing strategy and improving Amazon profitability was "a delicate conversation for numerous reasons and probably best suited for a phone call/virtual meeting."[88] Exchanges like these demonstrate that Amazon's price fixing is even more widespread than the already-voluminous documentary record suggests.

### III. LEGAL STANDARD FOR PRELIMINARY INJUNCTIONS IN CALIFORNIA

When the government seeks a preliminary injunction, once it establishes a reasonable probability

---

[82] *Id.* at 910.
[83] *Id* at 908.
[84] Ex. 45 (CAAGLit-AMZ_07413388) at 388-392.
[85] Ex. 46 (CAAGLit-AMZ_07401954) at slide 3 [emphasis in original]. "ASP" stands for Average Selling Price of a product in the market.
[86] Ex. 47 (CAAGLit-AMZ_06707119) at 120; *see also* Ex. 48 (CAAGLit-AMZ_07115844) at 847; Ex. 49 (CAAGLit-AMZ_06687596) at 596 ["MCP . . . ask is *best done by phone*."] [emphasis added]; Ex. 50 (CAAGLit-AMZ_04671018) at 028 ["If we think [telling the vendor who the competing retailer is] [] will lead them to negotiate with us . . . you may identify the competing retailer by name. *In all cases, these conversations should be verbal* …"] [second emphasis added].
[87] *See* Ex. 40 (CAAGLit-AMZ_08264180) at slide 8; Ex. 34 at 386:4-389:5.
[88] Ex. 51 (CAAGLit-AMZ_06107279) at 281.

of prevailing on the merits, "a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant." (*People v. Uber Techs., Inc.* (2020) 56 Cal.App.5th 266, 283–84 [citation omitted].) Indeed, "[w]here a legislative body has enacted a statutory provision proscribing a certain activity, it has already determined that such activity is contrary to the public interest." (*IT Corp. v. Cty. of Imperial* (1983) 35 Cal.3d 63, 70.) Only if the defendant can show that "it would suffer grave or irreparable harm from the issuance of the preliminary injunction" does the court "examine the relative actual harms to the parties." (*Id.* at 72; *see also Water Replenishment Dist. of S. Cal. v. City of Cerritos* (2013) 220 Cal.App.4th 1450, 1463.) The People seek relief under the Cartwright Act, which specifically authorizes injunctive relief. (Bus. & Prof. Code § 16754.5.) Accordingly, the *IT Corp.* presumption applies.

## IV. ARGUMENT

### A. The People are Highly Likely to Prevail Because Amazon is Fixing Retail Prices

#### 1. Price Fixing in Any Form Is *Per Se* Unlawful Under the Cartwright Act

The Cartwright Act "generally outlaws any combinations or agreements which restrain trade or competition or which fix or control prices, and declares that, with certain exceptions, every trust is unlawful, against public policy and void." (*In re Cipro Cases I & II* (2015) 61 Cal.4th 116, 136; *see also Speegle v. Bd. of Fire Underwriters of the Pac.* (1946) 29 Cal.2d 34, 42–44.) The Cartwright Act explicitly prohibits the following pricing combinations or agreements:

> "[t]o . . . increase the price of merchandise or of any commodity" (Bus. & Prof. Code § 16720(b)); "[t]o fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established . . . ." (*id*. at § 16720(d)); to "[b]ind themselves not to sell . . . any article . . . below a common standard figure, or fixed value" (*id*. at § 16720(e)(1)); to "[a]gree in any manner to keep the price of such article . . . at a fixed or graduated figure" (*id*. at § 16720(e)(2)); and to "[e]stablish or settle the price of any article . . . between them or themselves and others, so as . . . to preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale . . . of any such article." (*id*. at § 16720(e)(3).)

Consistent with the text of the Cartwright Act, California courts have long held that price fixing agreements are *per se* illegal and are thus condemned on their face. "[P]rice fixing is illegal per se, so that *any* combination which tampers with price structures constitutes an unlawful activity." (*Kolling v. Dow Jones & Co.* (1982) 137 Cal.App.3d 709, 721.) "[A]greements fixing or tampering with prices are illegal per se." (*Oakland-Alameda Cty. Builders' Exchange v. F.P. Lathrop Constr. Co.* (1971) 4 Cal.3d 354, 363; *see also Cellular Plus, Inc. v. Super. Ct.* (1993) 14 Cal.App.4th 1224, 1243–44; *People v. Building Maintenance Contractors' Ass'n* (1953) 41 Cal.2d 719, 726–28.)

The *per se* rule applies to both horizontal and vertical price fixing schemes. (*Mailand*, *supra*, 20 Cal.3d at 376; *see also Building Maintenance*, *supra*, 41 Cal.2d at 726–28.) Vertical price fixing "destroys

12

horizontal competition as effectively as would a horizontal agreement among distributors or retailers and is per se unlawful under the Cartwright Act." (*Kunert v. Mission Fin. Servs. Corp.* (2003) 110 Cal.App.4th 242, 263 [citation omitted].) Coercion of downstream distributors to fix wholesale prices is *per se* unlawful. (*R.E. Spriggs Co. v. Adolph Coors Co.* (1979) 94 Cal.App.3d 419, 428.)

### 2. Amazon is Engaged in Price Fixing Under California Law

Parties engage in price fixing when they "seek to determine the price at which goods or services shall be offered to third parties." (*Building Maintenance*, *supra*, 41 Cal.2d at 728.) Amazon, its vendors, and competing retailers are doing precisely that by Breaking the Price Match, Increasing the Competitor Retail Price, and Removing the Product. More specifically, in the Breaking the Price Match example highlighted above, Amazon, Levi's, and Walmart agreed on a higher retail price of $29.99 for Levi's Khaki pants, increasing the retail price charged to consumers on Amazon and Walmart from $25.47-$26.99 to $29.99.[89] In the Increasing the Competitor Retail Price and Removing the Product example above, Amazon told All the Rages that the retail price of a lamp needed to be higher than $26.99, the price at which Home Depot was selling the product.[90] To ensure that prices were high enough for Amazon, All the Rages removed inventory from other retailers and "contacted the retailers to fix the retail."[91] As a result, the vendor had "seen the retail increased for a lot of the items already," including the lamp which had increased from $26.99 to $29.99.[92] Once again, this resulted in a clear agreement to increase the retail price of All the Rages' products, both on Amazon and on other websites. And in another Removing the Product example, Armen Living and Amazon explicitly agreed to raise retail prices on several pieces of furniture, including from $89.66 to $113.99 and from $156.58 to $172.97.[93] To appease Amazon's complaints about its competitors offering low prices for those products on their websites, Armen Living agreed to stop Amazon's "problematic competition" from being able to offer those products at all, by removing the products from the competitors' websites.[94] Once the products were removed from the competitors, prices increased on Amazon to the agreed price.

Simply put, each of these methods constitutes price fixing. This price fixing scheme is driven by Amazon, and it occurs against the backdrop of Amazon's substantial bargaining leverage over its vendors and its threats of steep penalties for vendors' failure to comply. As the *Spriggs* court noted, "[defendant's] ideas about proper prices at the wholesale and retail level may only have been couched in terms of

---

[89] Ex. 3 (CAAGLit-AMZ_06837773) at 773-781.
[90] Ex. 5 (CAAGLit-AMZ_05993124) at 127-128.
[91] *Id.* at 126.
[92] *Id.* at 126-127.
[93] Ex. 6 (CAAGLit-AMZ_07698118) at 118-123.
[94] *Id.* at 119-121.

MEMORANDUM ISO THE PEOPLE'S MOT. FOR PRELIMINARY INJUNCTION
(CGC-22-601826)

suggestions, but having in mind [defendant's] relative economic clout" there is clear evidence that the defendant engaged in price fixing "through suggestions which the distributors could not refuse." (*Spriggs, supra*, 94 Cal.App.3d at 425.) Just as in *Spriggs*, unable to refuse Amazon's pricing demands, vendors are coerced into acting as intermediaries for Amazon and its online retail competitors to fix online retail prices. By agreeing with its vendors and competitors on retail prices, Amazon is "tampering with prices." (*Lathrop, supra*, 4 Cal.3d at 363.) This conduct violates at least five separate pricing provisions of the Cartwright Act. (Bus. & Prof. Code §§ 16720(b), (d), (e)(1), (e)(2), and (e)(3).) As a *per se* violation of the Cartwright Act, the People are likely to prevail.

### B. Amazon Cannot Overcome *IT Corp.*'s Rebuttable Presumption of Public Harm

Because the People are likely to succeed on the merits of their claims that Amazon's price fixing violates the Cartwright Act, a "rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant." (*IT Corp., supra*, 35 Cal.3d at 72.) The burden thus shifts to Amazon to demonstrate it "would suffer grave or irreparable harm from the issuance of the preliminary injunction." (*Ibid.*) Amazon cannot meet this burden.

Amazon cannot show that *any* harm arises from a prohibition against illegal acts. "[A] party suffers no grave or irreparable harm by being prohibited from violating the law," (*Uber, supra*, 56 Cal.App.5th at 306), and "as a matter of law, the cost of ceasing illegal conduct is not a cognizable injury" (*BBBB Bonding Corp. v. Caldwell* (2021) 73 Cal.App.5th 349, 378). The purpose of the proposed injunction is to restrain Amazon from engaging in illegal price fixing schemes with its vendors and retail competitors, and Amazon can comply with the injunction by simply ceasing its illegal behavior.[95] Amazon has no legal right to engage in price fixing, and thus cannot claim harm arising out of a prohibition against doing that which it has no right to do in the first place.

Neither does financial loss suffice to show grave or irreparable harm. (*IT Corp., supra*, 35 Cal.3d at 75.) In *IT Corp.*, the California Supreme Court found that although "the injunction would cause IT a substantial economic loss . . . IT failed to show that the injunction would cause harm sufficient to constitute grave or irreparable injury" given that the injunction would prohibit only specific activities and otherwise allowed the defendant to continue to operate. (*Ibid.*) Any financial burden Amazon might incur to ensure that it refrains from illegal price fixing simply does not rise to the level of grave or irreparable harm.[96]

---

[95] Appointment of a monitor to oversee Amazon's compliance is well within the Court's "broad powers to fashion a remedy." (*Dawson v. East Side Union High School Dist*. (1994) 28 Cal.App.4th 998, 1040, 1044-45 [citation omitted].) The role of the monitor would ensure that Amazon does not engage in illegal price fixing and would not require Amazon to substantially reshape its daily operations.

[96] Although the Court need not balance the relative harms, the balance of harms tips sharply in the People's favor. Amazon's price fixing is taking money out of the pockets of millions of California consumers every

(continued…)

14

## V. CONCLUSION

For the reasons set forth above, the People request the following interim relief, which is targeted to restraining Amazon's most egregiously unlawful conduct pending trial:

- That Amazon be enjoined from agreeing with its vendors and non-Amazon retailers to set, fix, control, maintain, stabilize, and/or tamper with retail prices for the vendors' products at any non-Amazon retailer.

- That Amazon be enjoined from:
  - agreeing with a non-Amazon retailer, through their common vendor, to break a price match on a product to increase the retail price;
  - coercing, requesting, or agreeing with a vendor to act as an intermediary to break a price match with a non-Amazon retailer;
  - agreeing with a non-Amazon retailer, through their common vendor, to increase the retail price of a product on a non-Amazon retailer;
  - coercing, requesting, or agreeing with a vendor to act as an intermediary to increase the retail price of a product on a non-Amazon retailer; and
  - coercing, requesting, or agreeing with a vendor to make a product unavailable on a non-Amazon retailer so that Amazon can increase the retail price.

- That Amazon be prohibited from communicating with vendors—whether by phone, in person, or by email, chat, text, or other electronic means—concerning:
  - The price of a vendor's product(s) at any non-Amazon retailer;
  - Amazon's matching of the price of a vendor's product(s) at any non-Amazon retailer;
  - Sales and/or promotions affecting a vendor's product(s) at any non-Amazon retailer; and
  - Whether to remove or withdraw a vendor's product(s) from any non-Amazon retailer.

- That Amazon be prohibited from requesting that vendors pay Amazon money because Amazon is price matching a lower retail price on a product offered by a non-Amazon retailer.

- That a monitor be appointed to oversee and enforce Amazon's compliance with the above injunction.

---

day and reducing available product selection/choice. Protecting California consumers from suffering higher prices on everything from diapers to clothing to furniture greatly outweighs whatever harm Amazon may experience to comply with the law.

15

DATED: February 23, 2026

Respectfully Submitted,

By: /s/ Jamie L. Miller

JAMIE L. MILLER
Supervising Deputy Attorney General
ROB BONTA (SBN 202668)
Attorney General of California
PAULA BLIZZARD (SBN 207920)
Senior Assistant Attorney General
JAMIE L. MILLER (SBN 271452)
STEPHEN R. SMEREK (SBN 208343)
Supervising Deputy Attorneys General
EMILY C. CURRAN (SBN 293065)
EMILY HUANG (SBN 334040)
NELL G. MOLEY (SBN 295498)
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone:  (415) 510-3565

*Attorneys for Plaintiff and Cross-Defendant,
The People of the State of California*

MEMORANDUM ISO THE PEOPLE'S MOT. FOR PRELIMINARY INJUNCTION
(CGC-22-601826)