DAVIS WRIGHT TREMAINE LLP

John D. Freed (CA State Bar No. 261518)
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
Telephone: (415) 276-6500
Email: jakefreed@dwt.com

Attorney for Respondent
AMAZON.COM, INC.

**IN THE UNITED STATES DISTRICT COURT**

**THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAPLEBEAR INC. d/b/a INSTACART,<br><br>          Petitioner,<br><br>     v.<br><br>AMAZON.COM, INC.,<br><br>          Respondent. | Case No. 3:26-mc-80136-TLT<br><br>Rel. Case No. 2:21-cv-00898-RSL (W.D. Wash.)<br><br>**AMAZON'S OPPOSITION TO INSTACART'S MOTION AND CROSS-MOTION TO COMPEL SUBPOENA COMPLIANCE**<br><br>Date: September 29, 2026<br>Time: 2:00 P.M.<br>Location: Courtroom 9<br>Judge: Hon. Trina L. Thompson<br><br>NO ORAL ARGUMENT REQUESTED |

AMAZON'S OPP. TO INSTACART'S MOT. AND CROSS-MOT. TO COMPEL SUBPOENA COMPLIANCE
Case No. 3:26-mc-80136-TLT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on September 29, 2026, at 2:00 P.M. in Courtroom 9 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Respondent Amazon.com, Inc. will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i) for an order compelling Petitioner Maplebear Inc. d/b/a Instacart to provide all documents responsive to Subpoena Request Nos. 13 and 17. This cross-motion is based on the pleadings and papers on file in this action, this Notice of Motion, Amazon's Brief, the Declaration of Nicholas A. Valera and its exhibits, and any such matters as may be presented to the Court. Amazon does not request oral argument pursuant to Civil L.R. 7.1(b).

*REQUESTED RELIEF*: Amazon seeks an order denying Petitioner's Motion to Quash and for Protective Order and compelling Instacart to produce, within thirty days, all documents responsive to Subpoena Request Nos. 13 and 17, including data sufficient to show price and availability of all "consumer goods" or "food items" sold on Instacart's platform from January 31, 2020 through October 20, 2022.

DATED: May 29, 2026 DAVIS WRIGHT TREMAINE LLP

By:  */s/ John D. Freed*
      John D. Freed

Attorneys for Respondent
AMAZON.COM, INC.

DAVIS WRIGHT TREMAINE LLP

i

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ......................................................................................................... 2

    A. The Underlying Class Action Requires Extensive Third-Party Discovery Into the Pricing of Consumer Goods and Food Items During the Pandemic. ...... 2

    B. Amazon Subpoenaed Instacart for Information Relevant to Its Defenses. ......... 3

    C. Instacart Possesses Unique and Comprehensive Pricing Data. ........................... 6

        1. Instacart provided a platform for third parties to sell groceries to consumers during the relevant time period. ............................................. 6

        2. Consumers turned to Instacart during the Pandemic for its grocery delivery service. .................................................................................... 7

        3. Instacart possesses unique consumer good and food item price information. ........................................................................................... 7

III. ISSUES PRESENTED ................................................................................................ 8

IV. ARGUMENT .............................................................................................................. 8

    A. The Court Should Deny Instacart's Motion as Filed in the Wrong Court. .......... 8

        1. Rule 26 requires Instacart to move for a protective order where the action is pending. ................................................................................ 8

        2. Rule 45 requires Instacart to move to quash in the Subpoena's court of compliance. ........................................................................... 9

    B. Alternatively, the Court Should Transfer the Motion to the Western District of Washington ..................................................................................... 11

    C. The Court Should Deny Instacart's Motion. ...................................................... 14

        1. Instacart's information on the price and availability of consumer goods and food items sold on its platform is relevant. ........................... 14

        2. Amazon's Requests are not facially overbroad or unduly burdensome. ...................................................................................... 15

        3. Amazon has a substantial need for Instacart's unique price and availability information. ...................................................................... 18

        4. Instacart's confidentiality objections are meritless. .............................. 20

AMAZON'S OPPOSITION TO INSTACART'S MOTION AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT

D.    The Court Should Grant Amazon's Cross-Motion to Compel Compliance with the Narrowed Subpoena. ...................................................................21

    1.    Amazon narrowed the relevant Subpoena requests.............................22

    2.    The Subpoena seeks relevant, unique, and proportionate information critical to Amazon's defenses...............................................23

V.    CONCLUSION .........................................................................................................24

DAVIS WRIGHT TREMAINE LLP

AMAZON'S OPPOSITION TO INSTACART'S MOTION AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABC Corp. v. XMission LC*,
  2021 WL 1751294 (D. Ariz. 2021) ....................................................................................... 9

*AFMS LLC v. United Parcel Service Co.*,
  2012 WL 3112000 (S.D. Cal. 2012) ..................................................................................... 21

*ASI, Inc. v. Boren, Osher & Luftman*, LLP,
  2025 WL 1090173 (C.D. Cal. 2025) ..................................................................................... 12

*Blagman v. Apple Inc.*,
  2014 WL 12607841 (C.D. Cal. 2014) ........................................................................ 16, 17, 18

*Bright House Networks, LLC v. MarkMonitor, Inc.*,
  2020 WL 4464882 (N.D. Cal. 2020) ..................................................................................... 12

*Bunn v. Dash*,
  2021 WL 4868361 (C.D. Cal. 2021) ..................................................................................... 11

*Cen Com Inc. v. Numerex Corp.*,
  2018 WL 1737943 (W.D. Wash. 2018) ................................................................................. 10

*Conservation Law Found., Inc. v. Equilon Enters. LLC*,
  2025 WL 2821238 (D.R.I. 2025) .......................................................................................... 10

*Corrales v. Castillo*,
  2008 WL 11451256 (D. Nev. 2008) ......................................................................................... 9

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) .................................................................................................... 6

*E4 Strategic Sols., Inc. v. Pebble Ltd. P'ships*,
  2015 WL 12746706 (C.D. Cal. 2015) ...................................................................... 11, 12, 13

*Erickson v. Builder Advisor Grp. LLC*,
  2022 WL 1265823 (N.D. Cal. 2022) ..................................................................................... 21

*Greenberg v. Amazon.com, Inc.*,
  553 P.3d 626 (Wash. 2024) ...................................................................................................... 2

*In re Kaiser Found. Health Plan Inc.*,
  2026 WL 381630 (N.D. Cal. 2026) ....................................................................................... 22

*In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*,
  337 F.R.D. 639 (N.D. Cal. 2020) .......................................................................................... 14

DAVIS WRIGHT TREMAINE LLP

AMAZON'S OPPOSITION TO INSTACART'S MOTION AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT

*In re Samsung Elec. Co.*,
  2022 WL 425579 (N.D. Cal. 2022).........................................................................................18

*In re Subpoena of DJO, LLC*,
  295 F.R.D. 494 (S.D. Cal. 2014)...................................................................................... 16, 21

*In re Subpoena to Kia Motors Am., Inc.*,
  2014 WL 2118897 (C.D. Cal. 2014).......................................................................................14

*In re Third Party Subpoena Issued to OPSEC Online LLC v. Altice USA, Inc.*,
  2024 WL 1135667 (C.D. Cal. 2024)..........................................................................................9

*Intel Corporation v. Protection Capital LLC*,
  2013 WL 12313348 (S.D. Cal. 2013) ....................................................................................18

*Kremers v. Coca-Cola Co.*,
  712 F. Supp. 2d 759 (S.D. Ill. 2010) .....................................................................................15

*Linet Ams., Inc. v. Hill-Rom Holdings, Inc.*,
  2025 WL 889579 (N.D. Ill. 2025)...........................................................................................10

*Little & Gorgeous Inc. v. O'Neil*,
  2025 WL 2172696 (W.D. Wash. 2025) ..................................................................................13

*McCoy v. Sw. Airlines Co.*,
  2011 F.R.D. 381 (C.D. Cal. 2002) .........................................................................................10

*McGee v. Diamond Foods, Inc.*,
  2016 WL 816003 (S.D. Cal. 2016), *aff'd sub nom. McGee v. S-L Snacks Nat'l*, 982
  F.3d 700 (9th Cir. 2020).................................................................................................. 14, 15

*Medina v. Two Jinn, Inc.*,
  2023 WL 9502955 (N.D. Cal. 2023)..........................................................................................6

*Merchant Consulting Grp. Inc. v. Beckpat LLC*,
  2018 WL 4510269 (D. Mass. 2018)........................................................................................10

*Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*,
  301 F.R.D. 426 (N.D. Cal. 2014) ............................................................................... 12, 13, 14

*Pac. Overlander, LLC v. Kauai Overlander*,
  2018 WL 3821070 (N.D. Cal. 2018)..........................................................................................6

*Pebble Ltd. Partnership v. Environmental Protection Agency*,
  310 F.R.D. 575 (D. Alaska 2015) ...........................................................................................19

*Pizana v. Basic Rsch., LLC*,
  2022 WL 1693317 (E.D. Cal. 2022) ..........................................................................................9

*Steinberg et al. v. Amazon.com, Inc.*,
  No. 2:21-cv-00898-RSL (W.D. Wash.) ........................................................................... 1, 2, 21

v

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

*Strike 3 Holdings, LLC v. Doe*,
   2018 WL 10604533 (N.D. Cal. 2018) ................................................................................. 9, 11

*Swartzmiller Assocs. Inc. v. Das Holz Haus LLC*,
   2025 WL 317598 (D. Ariz. 2025) ............................................................................................ 9

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*,
   445 F. Supp. 3d 139 (N.D. Cal. 2020) ..................................................................................... 6

*TiVo, Inc. v. EchoStar Comms. Corp.*,
   2005 WL 8172523 (W.D. Wash. 2005) ................................................................................. 18

*Vervain, LLC v. Kingston Tech. Co., Inc.*,
   2025 WL 885599 (N.D. Cal. 2025) .......................................................................................... 9

*Wultz v. Bank of China, Ltd.*,
   304 F.R.D. 38 (D.D.C. 2014) ................................................................................................. 12

**Rules**

Fed. R. Civ. P.
   26(b)(1) ................................................................................................................................... 21
   26(b)(2) ................................................................................................................................... 23
   26(c)(1) ..................................................................................................................................... 8
   45(d)(2)(B)(i) ...................................................................................................................... i, 21
   45(d)(3)(A) ............................................................................................................................... 9
   45(d)(3)(B) ......................................................................................................................... 9, 21

Fed. R. Evid.
   201(b) ....................................................................................................................................... 2
   201(c)(2) ................................................................................................................................... 2

N.D. Cal., Civil Local Rules (L.R.)
   7-1(b) ........................................................................................................................................ i
   37-2 ......................................................................................................................................... 23

W.D. Wash., Local Civil Rules
   7(b)(4) ..................................................................................................................................... 13

# I.    INTRODUCTION

Amazon is defending a putative class action in the Western District of Washington (WDWA) in which Plaintiffs allege sweeping claims of price-gouging on every consumer good or food item sold on Amazon.com during the COVID-19 pandemic ("Pandemic"), *Steinberg et al. v. Amazon.com, Inc.*, No. 2:21-cv-00898-RSL (W.D. Wash.). One of Amazon's key defenses is that Plaintiffs' alleged injuries were "reasonably avoidable" because they "could have shopped elsewhere and purchased the desired items at better prices." Dkt. 1-13 at 1. For this defense, Amazon needs price and availability data from others, including online retail platforms like Maplebear Inc. (d/b/a "Instacart"). Amazon therefore subpoenaed Instacart (the "Subpoena")—in addition to other third parties—seeking price and availability data for all "consumer goods and food items" sold on Instacart's platform between January 2020 and October 2022. The *Steinberg* Court held that this data is "critical" to the case and compelled others to produce it. Dkt. 1-13 at 5. Yet Instacart refused to produce anything. It instead moved to quash the Subpoena and for a protective order in this Court ("Motion," Dkt. 1), rather than in the issuing court or court of compliance.

The Court should deny Instacart's Motion for lack of jurisdiction or, in the alternative, transfer the Motion to the WDWA. If the Court reaches the merits, it should deny Instacart's Motion and grant Amazon's cross-motion to compel compliance with the narrowed Subpoena.

*First*, Instacart filed its Motion in the wrong court. The WDWA is the court that issued the Subpoena, the court of compliance for the Subpoena, and where Instacart has material business operations and has already waived any objection to jurisdiction. The WDWA, not this Court, is the court with jurisdiction under Rule 45 to quash or enforce the Subpoena, as well as to consider Instacart's request for a protective order.

*Second*, even if this Court were a proper venue for the Motion, judicial economy and the risk of inconsistent rulings necessitate transfer to the WDWA. Judge Robert Lasnik has presided over *Steinberg* for five years, including extensive motions practice on discovery that have shaped the contours of the case. Judge Lasnik should decide the Motion.

1

***Third***, if this Court keeps the Motion, it should deny it and grant Amazon's cross-motion. The price and availability information Amazon seeks is undisputedly relevant and, as Judge Lasnik has found, "critical to Amazon's defenses." Dkt. 1-13 at 5. Instacart's public statements show that millions of consumers turned to its online platform during the Pandemic. Instacart thus possesses unique data relating to the price and availability of consumer goods and food items sold on its platform during the Pandemic. That data is highly relevant, necessary to Amazon's defense, and Instacart's unsubstantiated burden objections and other excuses do not justify its noncompliance. The Court should compel compliance with the Subpoena, which Amazon has agreed to limit to align with Judge Lasnik's orders and ensure proportionality.

## II.      BACKGROUND

### A.      The Underlying Class Action Requires Extensive Third-Party Discovery Into the Pricing of Consumer Goods and Food Items During the Pandemic.

This dispute arises from a complex putative class action in the WDWA, overseen by Judge Lasnik. *Steinberg et al. v. Amazon.com, Inc.*, No. 2:21-cv-00898-RSL (W.D. Wash.).[1] Since 2021, Judge Lasnik has ruled on motions to dismiss multiple iterations of the complaint, certified questions to the Washington Supreme Court, *Greenberg v. Amazon.com, Inc*., 553 P.3d 626 (Wash. 2024), managed an extensive discovery process including significant inter-party and third-party disputes, and overseen multiple pleading amendments.

The core of the case is Plaintiffs' claims that Amazon "price gouged" during the Pandemic. *See* Dkt. 1-4 ¶¶ 13–65. They seek to represent a class of potentially *every purchase of every consumer good and food item* available on Amazon.com over nearly a three-year period. *Id.* ¶ 130. Amazon's online store offers hundreds of millions of products, including books, electronics, apparel, groceries, industrial supplies, and luxury goods, sold by Amazon and third-party sellers.

Amazon seeks third-party discovery on the price and availability of the same or comparable products to the consumer goods and food items available on Amazon.com,

---

[1] Pursuant to Federal Rules of Evidence 201(b) and 201(c)(2), Amazon requests that the Court take judicial notice of the docket, orders, and other documents filed in *Steinberg*, and the two complaints attached as Exs. K and L to the Declaration of Nicholas A. Valera ("Valera Decl.").

2

AMAZON'S OPP. TO INSTACART'S MOT. TO QUASH AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT

DAVIS WRIGHT TREMAINE LLP

information Judge Lasnik has determined is "critical" to its defenses. *See* Dkt. 1-13 at 5. Amazon has subpoenaed 150 retailers at the local, regional, and national levels. *Id.* Amazon divided its requests in these subpoenas into two tiers to minimize the burden to third parties. Dkt. 1-5. The Tier 1 Requests seek discovery on the price and availability of the six specific items underlying Plaintiffs' claims and on comparable products. *Id.* The Tier 2 Requests mirror Plaintiffs' class definition, seeking discovery on the price and availability of all consumer goods and food items. *Id.*

On December 4, 2024, Amazon moved for a protective order to limit discovery to the named Plaintiffs' alleged purchases instead of the billions of products that could potentially qualify as consumer goods or food items. *See* Dkt. 1-14. Amazon agreed to hold the Tier 2 Requests in abeyance for all third parties—including Instacart—while that motion was pending. *See* Dkt. 1-5. While Amazon's motion was pending, third-party Aldi filed a motion in the WDWA to quash Amazon's subpoena. *See* Valera Decl., Ex. A.

On July 18, 2025, Judge Lasnik denied Amazon's motion for protective order, finding that Amazon's data for all "consumer goods and food items" was "clearly relevant" to the case. Dkt. 1-15 at 1–2. Consistent with that ruling, the Court also held that Amazon's subpoena sought relevant information from third-party Aldi, specifically that "the prices at which Aldi offered consumer goods and food items for sale . . . . is critical to Amazon's defenses." Dkt. 1-13 at 5 (the "Aldi Order"). The Court explained Amazon's defenses include showing that Plaintiffs' injuries were reasonably avoidable because they "could have shopped elsewhere and purchased the desired items at better prices." *Id.* at 1. Accordingly, Judge Lasnik rejected Aldi's argument that its pricing data for its products was irrelevant simply because those products were not identical to products offered in the Amazon store. *Id.* at 3–4. The Court also ordered Aldi to produce any price-gouging policies. *Id.* at 5.

**B.      Amazon Subpoenaed Instacart for Information Relevant to Its Defenses.**

On December 18, 2024, Amazon served Instacart with the Subpoena. Dkts. 1-3; 1-5. Consistent with its subpoenas to other third-party retailers, Amazon limited its initial subpoena request to Instacart to the Tier 1 products. Instacart served its responses and objections to the

3

DAVIS WRIGHT TREMAINE LLP

Subpoena on January 17, 2025. Dkt. 1-6. In subsequent communications, Instacart insisted that Amazon should seek data regarding the price and availability of products on Instacart's platform from other third parties. *See* Dkt. 1-7 at ECF pp. 14-15. The parties never reached an agreement regarding Instacart's Tier 1 production and Instacart never produced any responsive data. Valera Decl. ¶ 5.

Following Judge Lasnik's July 18, 2025 Aldi Order, Amazon asked Instacart to comply with the Subpoena's Tier 2 Requests: documents related to anti-price-gouging policies and actions and the price and availability of "consumer goods and food items sold by third-parties" on Instacart's platform. Dkt. 1-8 at 2–3. Amazon explained to Instacart that it modified its requests to be consistent with Judge Lasnik's orders, including limiting them to the period between January 31, 2020, and October 20, 2022. *See id.* Amazon also explained that it only seeks information sufficient to glean the price and availability of consumer goods and food items between January 31, 2020, and October 20, 2022. *Id.*

The parties met and conferred regarding the Tier 2 Requests on February 3 and February 24, 2026, but Instacart refused to take a position on the requests. Valera Decl. ¶ 6. Counsel only confirmed that Instacart did not have documents responsive to Subpoena Requests 5 and 6. Dkt. 1-7 at ECF p. 7. Subsequently, Instacart failed to follow up on an agreed-to deadline and ignored Amazon's request for updates. *Id.* at ECF pp. 5-6. Amazon informed Instacart that if it did not receive any response by April 1, 2026, it would consider the parties at an impasse. Dkt. 1-7 at ECF p. 5.

On April 1, 2026, Instacart maintained that Amazon's requests imposed an unreasonable burden, including because Amazon had "successfully subpoenaed" other third parties and because of the purported effort in responding to the Subpoena. *See* Dkt. 1-7 at ECF p. 4. It also misstated that Amazon demanded that Instacart produce its data in specific categories, even though Amazon explained on February 2026 that it ultimately sought relevant price and availability information for consumer goods and food items. Dkt. 1-7 at ECF p. 6–7. And while Amazon requested certain information in Instacart's production (e.g., item description), it

4

DAVIS WRIGHT TREMAINE LLP

clarified that it understood that Instacart may not have certain data and that it was willing to work with Instacart. *See id.*

On April 2, 2026, Amazon responded to Instacart's April 1 correspondence and again explained to Instacart that it was seeking information related to price and availability of consumer goods and food items, not "all transaction data for every item purchased by every customer through the Instacart platform from January 31, 2020, and October 20, 2022." Dkt. 1-9 at 2. Amazon also—again— requested a good-faith proposal for what data Instacart would be willing to produce by April 16, 2026. *See id.* at 3.

That proposal never came. Valera Decl. ¶ 11. Instead, on April 15, 2026, Instacart responded that Amazon was "reverting to a maximalist demand." Dkt. 1-10 at 2. Instacart again created issues where none existed, including contending that Amazon was seeking the *original* scope of the Subpoena. *See id.* Instacart ignored that Amazon had consistently explained that it seeks data related to the price and availability of consumer goods and food items, consistent with Judge Lasnik's orders. Dkt. 1-9 at 2. Ultimately, Instacart conceded the relevance of the requested information, stating "the issue is not one of relevance; it is one of undue burden." Dkt. 1-10 at 3.

On April 28, 2026, Amazon sent additional correspondence to Instacart requesting a meaningful response by May 1, 2026. *See* Dkt. 1-11. On May 1, 2026, Instacart instead filed its Motion and sent another letter obfuscating the parties' conferral, including the inaccurate statement that Amazon's April 28 letter was the first time Amazon explained that it ultimately seeks information for the price and availability of consumer goods and food items. Valera Decl. ¶ 13, Ex. B. Instacart indicated that it possessed the relevant data but offered no material information regarding its actual burden to produce the requested information. *See id.* To date, Instacart has not produced—or offered to produce—a single document, nor has it explained *exactly* what responsive information it possesses.

AMAZON'S OPP. TO INSTACART'S MOT. TO QUASH AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT

### C.    Instacart Possesses Unique and Comprehensive Pricing Data.

#### 1.    Instacart provided a platform for third parties to sell groceries to consumers during the relevant time period.

Instacart provides a platform for retailers to sell grocery and consumer goods to customers. *See* Valera Decl., Ex. C at 2.[2] In 2021, Instacart maintained an extensive customer base, with a "delivery service" available to "over 85% of U.S. households." *Id.* at 6. That same year, Instacart represented in a press release that it had "partnered with more than 600 beloved national, regional and local retailers, including unique brand names, to deliver from more than 45,000 stores across more than 5,500 cities in North America." *Id.*; *see also*, Ex. D at 2 (700 retailers and 65,000 stores by November 2021). Instacart also partnered with "more than 1,100 national, regional, and local retail [brands], [which] collectively represent[ed] more than 80% of the U.S. grocery market." *See id.*, Ex. E at 12.[3]

A customer can use Instacart to shop from these many retailers, including through its "app or website [to] shop for groceries (and more!) from a store near [the customer]." *Id.*, Ex. G at 1. When a customer places an order, Instacart connects the customer to a "personal shopper" in the customer's area to shop for and deliver the customer's order, including through "[c]ontactless delivery" with its "[l]eave at my door" delivery option. *Id.* Instacart's "shoppers offer same-day delivery and pickup services to bring fresh groceries and everyday essentials to busy people and families across the U.S." *Id.*, Ex. C at 6.

---

[2] Amazon requests that the Court take judicial notice of the information included in excerpts and screenshots from Instacart's website attached to the Valera Decl. as Exs. C, D, G, H, I, and J. *See Threshold Enters. Ltd. v. Pressed Juicery*, *Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) ("In general, websites and their contents may be judicially noticed.") (citing *Pac. Overlander, LLC v. Kauai Overlander*, 2018 WL 3821070, at *2 (N.D. Cal. 2018)). Amazon also requests that the Court take judicial notice of the government records and reports attached as Exs. E, F, M, and N to the Valera Decl. *See, e.g., Medina v. Two Jinn, Inc.*, 2023 WL 9502955, at *2 (N.D. Cal. 2023) ("Records published on government-administered websites are proper subjects for judicial notice given their reliability.") (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

[3] *See also id.,* Ex. F at 12 (representing that by 2022, Instacart's brand partnership increased to include "more than 85% of the U.S. grocery market").

6

### 2. Consumers turned to Instacart during the Pandemic for its grocery delivery service.

Instacart, like Amazon, was a vital resource for consumers during the Pandemic. In a 2021 report titled "Beyond the Cart: a Year of Essential Insights," Instacart highlighted the extent to which consumers relied on its online grocery delivery service. *Id.*, Ex. H. Instacart recounts that "[o]n the evening of March 19, 2020, the first stay-at-home order in North America was issued in California, setting off a transformation of many of our 100-year-old-grocery shopping habits." *Id.* at 2. As a result, "millions signed up for online grocery delivery to get food on the table *safely* during a difficult time." *Id.* (emphasis added). Instacart also publicly acknowledged that its "growth rate [had been] impacted significantly by the increase in demand for online grocery shopping driven primarily by the COVID-19 Pandemic, which led to significant demand for [its] offerings." *Id.*, Ex. F at 40.

### 3. Instacart possesses unique consumer good and food item price information.

Instacart possesses pricing data that is unique to Instacart and highly relevant to this case. Instacart's public representations confirm that prices third-party retailers list on its platform may differ from in-store prices, stating "[w]hile many retailers offer everyday store prices[] on Instacart, some retailers may set prices on the Instacart platform that are different than in-store prices." *See* Valera Decl., Ex. I at 1. Additionally, Instacart notes that it "often offer[s] discounts and promotions not available in-store." *Id.* Instacart's representations demonstrate customers may pay unique prices on Instacart, including if they were to purchase the same product directly from the same third-party retailer. *See id.*

Instacart collects and possesses extensive data on its pricing, which is reflected in its Gross Transaction Value ("GTV") metric, including the actual prices customers paid for products listed on Instacart's platform after applicable taxes and fees. *See id.*, Ex. F at 67. Notably, Instacart reported that its "GTV increased 303% from 2019 to 2020, 20% from 2020 to 2021, and 16% from 2021 to 2022 as we added new customers and increased engagement from existing customers," explaining "[t]he COVID-19 pandemic significantly accelerated new order volume beginning at the end of the first quarter of 2020 through the first quarter of 2021." *Id.*

7

AMAZON'S OPP. TO INSTACART'S MOT. TO QUASH AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT

DAVIS WRIGHT TREMAINE LLP

Instacart possesses technology to collect broad information related to pricing. For example, Instacart represented that its "deeply integrated technology allows [it] to aggregate detailed information from many sources—retailers, advertisers, shoppers, and other third parties—to create a comprehensive dataset that contains real-time information about item availability . . . [and] shelf and promotional pricing." *Id.* at 69.

### III.    ISSUES PRESENTED

1.    Should the Court deny Instacart's Motion because Instacart filed it in the wrong court? Yes.

2.    Should the Court transfer Instacart's Motion to the WDWA for judicial efficiency and to avoid inconsistent discovery orders and disrupting Judge Lasnik's management of the underlying case? Yes.

3.    Should the Court deny Instacart's Motion because the Subpoena seeks relevant information related to the price and availability of consumer goods and food items during the Pandemic and is not overly burdensome, because Amazon has a substantial need for Instacart's responsive information, and because Instacart's production would be protected by an existing protective order? Yes.

4.    Should the Court grant Amazon's cross-motion to compel because it seeks relevant, proportionate, and critical information for its defenses in the underlying litigation? Yes.

### IV.    ARGUMENT

**A.    The Court Should Deny Instacart's Motion as Filed in the Wrong Court.**

Instacart asks this Court to (1) issue a protective order governing discovery issued by the WDWA for an action pending in the WDWA and (2) quash the WDWA's Subpoena in its entirety. Both requests must be brought in the WDWA, where the action is pending, compliance with the Subpoena is required, and Instacart has waived any jurisdictional objection.

**1.    Rule 26 requires Instacart to move for a protective order where the action is pending.**

Under Federal Rule of Civil Procedure 26(c)(1), "[a] party . . . from whom discovery is sought may move for a protective order *in the court where the action is pending*[.]" (emphasis

8

added). The underlying action is pending in the WDWA. *See* Dkt. 1-5. Therefore, this Court "lacks authority" to consider Instacart's Motion and should deny it. *See Swartzmiller Assocs. Inc. v. Das Holz Haus LLC*, 2025 WL 317598, at *2 (D. Ariz. 2025) (denying motion for protective order when it was not the court where the action was pending).

### 2. Rule 45 requires Instacart to move to quash in the Subpoena's court of compliance.

Under Rule 45, motions to quash must be filed "in the district where compliance is required[,]" *i.e.*, the court of compliance. *See Pizana v. Basic Rsch., LLC*, 2022 WL 1693317, at *2 (E.D. Cal. 2022); Fed. R. Civ. P. 45(d)(3)(A), (d)(3)(B). If a motion to quash is not filed in the court of compliance, then "that court lacks jurisdiction to resolve the motion" and must deny it. *See Pizana*, 2022 WL 1693317, at *3 (denying motions to quash for lack of jurisdiction); *Strike 3 Holdings, LLC v. Doe*, 2018 WL 10604533, at *2 (N.D. Cal. 2018) (same). Instacart's Motion fails because this Court is not the court of compliance.

***First***, because the Subpoena makes Seattle, Washington the place of compliance, *see* Dkt. 1-3 at ECF p. 2, the WDWA is the court with jurisdiction over Instacart's Motion. A "majority of federal courts," including courts in this District and other California federal courts, hold that the court of compliance is the place of compliance named in the subpoena. *Pizana*, 2022 WL 1693317, at *2 (collecting cases). This "majority" approach is more "consistent with Rule 45's text and structure" and better for judicial efficiency by ensuring that a court has jurisdiction before it rules on substantive challenges to the subpoena. *In re Third Party Subpoena Issued to OPSEC Online LLC v. Altice USA, Inc.*, 2024 WL 1135667, at *2 (C.D. Cal. 2024) (citation omitted); *see also ABC Corp. v. XMission LC*, 2021 WL 1751294, at *2 (D. Ariz. 2021) (adopting the "majority view" as more consistent with Rule 45); *Vervain, LLC v. Kingston Tech. Co., Inc.*, 2025 WL 885599, at *2 (N.D. Cal. 2025) (noting disagreement "on whether 'place of compliance' is the location" on the subpoena, or the location of the subpoenaed party, but applying "majority view.") (citation omitted).

***Second***, Instacart has failed to satisfy its burden of showing that WDWA is an improper place of compliance. *See, e.g., Corrales v. Castillo*, 2008 WL 11451256, at *1-2 (D. Nev. 2008)

9

DAVIS WRIGHT TREMAINE LLP

("Beltran has failed to provide evidence demonstrating that he does not regularly transact business in or near Las Vegas."). Nor could it make such a showing.

Instacart regularly transacts business in-person within 100 miles of Seattle, which satisfies Rule 45(c)'s requirement. For example, Instacart states it "operates in Seattle," and it has intervened and sued in state and federal courts in Washington to protect its business in Seattle. *See* Valera Decl., Ex. J at 1; Ex. K ¶ 15 (intervening to challenge a Seattle ordinance and describing itself as a company that does business in Seattle); Ex. L ¶ 7 (filing a complaint with the Washington Food Industry Association because a Seattle ordinance will cause "Instacart…to suffer unsustainable increased operational losses in the Seattle market"). Additionally, Instacart holds endorsements with the Washington Department of Revenue in various cities near Seattle[4] and has advocated for its labor and business-related interests in state board meetings. *See* Valera Decl., Ex. M at 1–2; Ex. N at 5–6 (Comments from an attorney for Instacart about a proposed rule in front of the Washington State Liquor and Cannabis Board).

Accordingly, Instacart's substantial, persistent, and pervasive business within the WDWA brings it within Rule 45's reach. *See Conservation Law Found., Inc. v. Equilon Enters. LLC*, 2025 WL 2821238, at *1 (D.R.I. 2025) (rejecting argument that corporate headquarters is the only place where an entity regularly transacts business in-person); *Linet Ams., Inc. v. Hill-Rom Holdings, Inc.*, 2025 WL 889579, at *4–5 (N.D. Ill. 2025) (finding subpoenaed party regularly transacted business in Chicago by listing job positions near Chicago and sending invoices to customers in Chicago for payment to a Chicago address).

***Third***, even if Instacart had a valid objection to compliance in the WDWA, it waived any such objection long ago. Instacart never objected to Seattle, Washington as the Subpoena's place of compliance. *See* Dkts. 1-3; 1-6. Instacart's "failure to timely object waives the right to object later." *See Cen Com Inc. v. Numerex Corp.*, 2018 WL 1737943, at *2 (W.D. Wash. 2018) (citing *McCoy v. Sw. Airlines Co.*, 2011 F.R.D. 381, 385 (C.D. Cal. 2002)); *Merchant Consulting Grp.*

---

[4] "If your business is physically located in, or will travel to" certain cities in Seattle, the business can apply for a city endorsement. *See* Washington State Department of Revenue, "*City endorsements*," https://dor.wa.gov/manage-business/city-endorsements (last visited May 29, 2026).

10

AMAZON'S OPP. TO INSTACART'S MOT. TO QUASH AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT

DAVIS WRIGHT TREMAINE LLP

*Inc. v. Beckpat LLC*, 2018 WL 4510269, at \*1 (D. Mass. 2018) (explaining failure to timely raise a 100-mile rule objection will usually waive the objection). Instead, Instacart's own objections to the Subpoena acknowledge that the WDWA was the appropriate forum when it referred to privileges and immunities "under Washington . . . law," as well as obligations under "the Local Rules of the District Court for the Western District of Washington." *See* Dkt. 1-6. Finally, Instacart failed to argue that WDWA is the improper court of compliance in its Motion. *See* Mot.

This is not the court of compliance for the Subpoena and so the Court must deny Instacart's motion to quash. *See Strike 3 Holdings*, 2018 WL 10604533, at \*2 (denying a motion to quash when the court was outside the place of compliance listed on the subpoena); *Bunn v. Dash*, 2021 WL 4868361, at \*2 (C.D. Cal. 2021) (same).

### B.    Alternatively, the Court Should Transfer the Motion to the Western District of Washington.

Even if the Court declines to enforce the named court of compliance, it should nonetheless transfer the Motion to the WDWA to avoid disrupting management of the underlying action and to preserve judicial economy. Under Rule 45(f), the court of compliance can transfer a subpoena-related motion under certain circumstances. Courts consider "a number of factors relating to the underlying litigation" when determining whether exceptional circumstances merit transfer, "including 'the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation.'" *E4 Strategic Sols., Inc. v. Pebble Ltd. P'ships*, 2015 WL 12746706, at \*3 (C.D. Cal. 2015) (citation omitted). Transfer is appropriate when the "circumstances favoring transfer outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.* (citation omitted). Here, the factors heavily favor transfer to the WDWA.

***First***, judicial economy favors transfer to the WDWA. The underlying action is five years old and discovery has been extensively litigated. *See* Valera Decl., Ex. O. Judge Lasnik has decided multiple discovery motions, from parties and third parties alike. *Id.* (highlighting at least six substantive discovery orders in the last year). Where, as here, the case has experienced

11

AMAZON'S OPP. TO INSTACART'S MOT. TO QUASH AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

"abundant discovery practice[,]" judicial economy favors transfer because the issuing court's experience allows it to decide subpoena-related motions more "efficiently and in a manner consistent with prior rulings." *ASI, Inc. v. Boren, Osher & Luftman*, *LLP*, 2025 WL 1090173, at *1 (C.D. Cal. 2025) (transferring where underlying action was ongoing for six years and judge had ruled on many discovery motions); *Bright House Networks, LLC v. MarkMonitor, Inc.*, 2020 WL 4464882, at *3 (N.D. Cal. 2020) (transferring where underlying action was pending for 500 days and judge had ruled on several discovery disputes).

Here, Judge Lasnik's multiple discovery orders have shaped the complex legal and factual contours of the underlying lawsuit. These include his orders on Amazon's motion for protective order as well as his order on Amazon's subpoena to Aldi, affecting Amazon's approximately 150 third-party subpoenas under Rule 45. *See* Dkts. 1-13; 1-15; 1-16. Indeed, Amazon modified its requests to the third parties based on Judge Lasnik's Aldi Order. *See* Dkt. 1-9 at 2 (narrowing Subpoena scope based on Aldi Order); Dkt. 1-11 at 2. Judge Lasnik has the most "familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *See E4 Strategic Sols.*, 2015 WL 12746706, at *4 (quoting *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014)).

***Second***, the Court should transfer Instacart's Motion to avoid a ruling that is inconsistent with Judge Lasnik's discovery rulings and case management. Transferring is necessary when "the issuing court has already ruled on [the] issues presented by a subpoena-related motion" and an inconsistent ruling could "disrupt[] the issuing court's management of the underlying litigation." *See Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 429–30 (N.D. Cal. 2014) (quoting Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment). Further, even pending motions can create the risk of inconsistent rulings when they involve "virtually identical" subpoenas in different districts unless the motions are transferred to the issuing court for resolution. *See E4 Strategic Sols.*, 2015 WL 12746706, at *3–4 (when third parties challenge similar subpoenas in different districts, this "heightens the danger of inconsistent rulings" and weighs in favor of transfer to the issuing court).

12

Here, Instacart's Motion asks this Court to weigh in and rule on issues that Judge Lasnik has already considered and is currently considering. Specifically, Judge Lasnik held in the Aldi Order that the price and availability of the Subpoena's Tier 1 consumer goods and food items are relevant to Amazon's defenses, and therefore compelled Aldi to produce that data (among other things). *See* Dkt. 1-13 at 3–4. *Id.* And Amazon's motion to compel Nordstrom to produce price and availability for its products under the Subpoena's Tier 2 products—the same requests at issue here—is also pending before Judge Lasnik. *See* Valera Decl., Ex. P. The issues in Instacart's Motion are not "'garden-variety' discovery issues", but are materially shaped by Judge Lasnik's orders. *E4 Strategic Sols.*, 2015 WL 12746706, at *4 (citation omitted). The Motion's outcome will affect Amazon's ability to mount its defense in this five-year-old case and impact the evidence available to Judge Lasnik for future rulings. Thus, Judge Lasnik "is in the best position to interpret his prior orders and to determine the scope of non-party discovery in the Underlying Action." *Id.*

***Third***, Instacart would not be unduly burdened by transferring its Motion to the WDWA, where Instacart regularly does business. The relevant rules make it easy and efficient for Instacart to litigate the Motion in the WDWA. Rule 45 allows Instacart to appear in the WDWA without local counsel. *See Little & Gorgeous Inc. v. O'Neil*, 2025 WL 2172696, at *2 (W.D. Wash. 2025) (citing Fed. R. Civ. P. 45(f)). The WDWA local rules provide that "all motions will be decided by the court without oral argument," unless otherwise ordered by the court. *See* Local Civil Rules W.D. Wash. 7(b)(4)[5]; *see also E4 Strategic Sols.*, 2015 WL 12746706, at *5–6 (analyzing local court rules and finding little evidence that litigating the motion to quash in the issuing court would require travel to it). Judge Lasnik has decided every discovery order in the underlying lawsuit, including the Aldi Order, without oral argument. *See* Dkt. 1-13 at 1 n.1. Further, any cost from transfer would be minimal because transferring motions "will require few, if any, modifications of the written submissions." *Moon Mountain Farms*, 301 F.R.D. at 430 (citation omitted). And in any event, Instacart is a national company. *See* Dkt. 1 at 3 (Instacart

---

[5] WDWA Local Civil Rules (eff. Jan. 13, 2026), https://www.wawd.uscourts.gov/sites/wawd/files/WAWD%20Local%20Civil%20Rules%20%282026%29%20-%20Clean.pdf.

13

DAVIS WRIGHT TREMAINE LLP

reached "more than 98% of households in North America"); *In re Subpoena to Kia Motors Am., Inc.*, 2014 WL 2118897, at *1 (C.D. Cal. 2014) (a national company would not be burdened by the transfer); *Moon Mountain Farms*, 301 F.R.D. at 430 (rejecting the same cost-related burden arguments any subpoenaed party could make). As a result, any minimal cost to Instacart of transferring to the WDWA is far "outweighed by the importance of consistent management of the underlying litigation and judicial economy." *Moon Mountain Farms*, 301 F.R.D. at 430.

### C.    The Court Should Deny Instacart's Motion.

If the Court reaches the merits of Instacart's Motion, it should deny it. "The scope of allowable discovery under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)." *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*, 337 F.R.D. 639, 645 (N.D. Cal. 2020) (citation omitted). "The moving party bears the burden of persuasion on a motion to quash[;] the party issuing the subpoena must demonstrate that the discovery is relevant." *Id.* Instacart fails to meet its burden.

#### 1.    Instacart's information on the price and availability of consumer goods and food items sold on its platform is relevant.

Amazon seeks data sufficient to show the price and availability of the "consumer goods and food items" sold on Instacart's platform between January 31, 2020, and October 20, 2022. Dkt. 1-3 at ECF pp. 11–12 (Subpoena Request Nos. 13, 17); Dkt. 1-8.[6] Instacart does not dispute relevance of the price and availability information the Subpoena seeks. *See* Dkt. 1-10 at 3 ("the issue is not one of relevance"); Mot. at 8 (explaining where the "relevant data" resides). Nor could it, given the discovery rulings to date: As Judge Lasnik explained, "information regarding the prices" of "consumer goods and food items" is "*critical* to Amazon's defenses." Dkt. 1-13 at 5 (emphasis added). If a putative class member could have found cheaper alternatives to Amazon on Instacart, "that fact would inform the jury's determination of whether [the class member] could reasonably have avoided the injury of which she complains" from her Amazon purchase. *Id.* at 4; *see also, e.g.*, *McGee v. Diamond Foods, Inc.*, 2016 WL 816003, at *7 (S.D. Cal. 2016)

---

[6] Instacart represents in its Motion, and a declaration from counsel, that "Instacart does not have policies or communications regarding price gouging or increased pricing for either Tier 1 or Tier 2 products." *See* Mot. at 10; Dkt. 1-2 ¶ 16.

14

AMAZON'S OPP. TO INSTACART'S MOT. TO QUASH AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

("Plaintiff selected Defendant's popcorn at her discretion from a vast amount of other . . . popcorn products she could have selected," so her injury was reasonably avoidable), *aff'd sub nom. McGee v. S-L Snacks Nat'l*, 982 F.3d 700 (9th Cir. 2020); *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 773 (S.D. Ill. 2010) ("[T]he injury caused by Coca-Cola's trade practices . . . is one that McCann, and . . . any other consumer of 'Classic' Coke quite easily could have avoided, by, for example, simply drinking a different soft drink or other beverage.").

The Subpoena's relevant time period is between January 31, 2020, and October 20, 2022. Instacart represented in November 2021 that its online delivery service was available to 85% of U.S. households and described itself as the "leading online grocery platform in North America." Valera Decl., Ex. D at 2–3. Instacart's business exploded during the Pandemic, when "millions signed up for online grocery delivery to get food on the table *safely* during a difficult time." Valera Decl., Ex. H at 2 (emphasis added). Instacart's platform thus offered a routine and accessible means to avoid the injury alleged in this lawsuit. *See id.*; *compare with* Dkt. 1-13 at 4 ("If Ms. King could have safely purchased . . . rice at Aldi for less than what she paid . . . on Amazon, that fact would inform the jury's determination of whether plaintiff could reasonably have avoided the injury of which she complains.").

Instacart's public statements admit that it aggregates the requested price and availability information, including to create "a comprehensive dataset that contains real-time information about item availability," pricing, promotions, and product characteristics. Valera Decl., Ex. F at 69. Instacart also possesses data used for its GTV, which is "the value of the products sold based on prices shown on Instacart." *Id.* at 9. Finally, Instacart's counsel acknowledged that this data does exist. Dkt. 1-7 at ECF p. 4 ("[T]he dataset is so large in the aggregate — some 500 TB — that it is not maintained in one single block[.]").

**2.      Amazon's Requests are not facially overbroad or unduly burdensome.**

Instacart's Motion does not establish that the Subpoena is unduly burdensome. "In determining whether a subpoena poses an undue burden, courts 'weigh the burden to the subpoenaed party against the value of the information to the serving party,'" considering "relevance, the need of the party for the documents, the breadth of the document request, the

15

time period covered by it, the particularity with which the documents are described and the burden imposed." *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014). Instacart "cannot simply invoke generalized objections" for burden. *Blagman v. Apple Inc.*, 2014 WL 12607841, at *3 (C.D. Cal. 2014) (citation modified). Instead, it "must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each request is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (citation modified). Instacart fails to establish undue burden.

***First***, Amazon modified the Subpoena's Tier 2 Requests to mitigate burden. *See, e.g.*, Dkt. 1-9 at 2–3 (explaining that Amazon "has explicitly narrowed the subpoena's scope to be consistent with the Court's order" and is willing to work with Instacart to "minimize burden"). For example, Amazon curtailed the Subpoena's time scope to January 2020 through October 2022 and "significantly ameliorated" its burden when ordering production from third-party Aldi for the Tier 1 Requests. Dkt. 1-13 at 5. During conferral, Amazon also explained to Instacart that it was no longer pursuing Requests that Judge Lasnik declined to endorse. *See, e.g.*, Dkt. 1-9 at 2 (narrowing Subpoena scope based on the Court's order); Dkt. 1-13 at 4–6. And, notably, Instacart never meaningfully responded to Amazon's requests for counterproposals that would provide Amazon with the critical price and availability data it needs while minimizing any production burden. *See, e.g.*, Dkt. 1-9 at 2 (explaining that Instacart has not responded to Amazon's offers to compromise).

***Second***, Instacart repeatedly mischaracterized Amazon's requests to inflate its supposed burden during meet and confers, claiming Amazon "revert[ed] to a maximalist demand" for all transaction data for every item purchased through Instacart despite Amazon explaining that it seeks "data relating to the price and availability of *all consumer goods* or food items" for the relevant time period. Dkt. 1-10 at 1–2. Amazon does *not* seek information related to "every single user transaction." Dkt. 1-11 at 2 (explaining Instacart mischaracterized Amazon's request instead of proposing ways to get requested data without relying on single user transactions).

16

AMAZON'S OPP. TO INSTACART'S MOT. TO QUASH AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

Instacart continues its mischaracterizations in its Motion to argue that the Subpoena is facially overbroad. For example, it argues that Amazon seeks to enforce the Subpoena as *originally* served, while ignoring Amazon's modifications to the Subpoena, including narrowing its time period or categories. *See* Mot. at 12. Similarly, it incorrectly states that "Amazon's actual demand is for 13 separate categories," Mot. at 13, when Amazon explicitly stated that it only seeks sufficient information to show the price and availability of consumer goods and food items. *See* Dkt. 1-11 at 2 (emphasizing that Amazon requests price and availability data for two categories: consumer goods and food items).

***Third***, Instacart never provided to Amazon any detailed technical information supporting its purported burden during the parties' meet and confers. In fact, Instacart provided no details of its purported burden until its April 1, 2026 email, where it only raised generalized concerns about the Subpoena's burden related to "[c]ustom configuration" of data, the amount of data at issue, and the work required to extract it. Dkt. 1-7 at ECF pp. 3–4. Instacart's declaration from Dylan Tonti, its Litigation Operations Manager, is the most detail Instacart has provided Amazon to date. *See* Dkt. 1-1 (Declaration of Dylan Tonti in Support of Petitioner Maplebear Inc.'s Motion to Quash Subpoena and For Protective Order). The Tonti Declaration again confirms Instacart possesses the information the Subpoena requests. *See id.* at 1 (referencing the "transaction database that houses the orders placed on the Instacart platform[.]").

Instacart must demonstrate that producing the relevant information will be unduly burdensome, and specifically, what that burden is. *Blagman*, 2014 WL 12607841, at \*3 (citation omitted). Instacart does not meet its burden.

Instead, Tonti provides opaque reasons for why producing the requested information is burdensome. For example, he states "Instacart does not have a pre-built mechanism, report, or export function to extract platform-wide, item-level data." Dkt. 1-1 ¶ 7. He further states that "[t]here are certain categories of information I understand Amazon requests that Instacart does not maintain or would need to convert to have it match Amazon's specific requests," but fails to identify which specific categories of information he is referring to. *See id.* ¶ 10.

17

AMAZON'S OPP. TO INSTACART'S MOT. TO QUASH AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT

While Tonti claims that it would take Instacart as many as eight weeks to collect the requested information, he does not specify the burden to create an extraction mechanism nor whether that burden could be mitigated by collecting only information related to Amazon's requests, price and availability. *See, e.g., In re Samsung Elec. Co.*, 2022 WL 425579, at \*2 (N.D. Cal. 2022) (vague declaration was insufficient to show the undue burden). Finally, Tonti does not state what costs Instacart would actually incur from producing the requested information. Thus, Tonti's declaration fails to provide sufficient detail to establish the Subpoena's Requests are overly burdensome. *See, e.g., Blagman*, 2014 WL 12607841, at \*3 ("The non-parties offer no factual basis for the Court to conclude that compliance with the pared down subpoenas would be burdensome in any way, let alone to an extent that the burden justifies an order quashing the subpoenas.").

*Finally*, Instacart is a sophisticated party with the resources to comply with the Subpoena. Instacart is a multibillion-dollar technology company that aggregates extensive, nationwide transaction-level data regarding products sold and purchases made through its platform. *See, e.g.*, Valera Decl., Ex. F at 12–13. Any burden Instacart could establish is outweighed by the importance of the information sought, especially where Amazon already narrowed the Subpoena's scope to align with Judge Lasnik's prior orders and to minimize burden.

### 3. Amazon has a substantial need for Instacart's unique price and availability information.

Instacart possesses price and availability information ***unique*** to its platform. *See* Dkt. 1-9 at 1–2 (explaining that Instacart has relevant information not captured by Amazon's other third-party subpoenas). Instacart's argument that Amazon could seek similar information from other third-party retailers does not diminish the necessity of Amazon's requested information. *TiVo, Inc. v. EchoStar Comms. Corp.*, 2005 WL 8172523, at \*3 (W.D. Wash. 2005) (rejecting third-party's arguments that similar data available from other third parties diminished the necessity of the requested information); *see also Intel Corporation v. Protection Capital LLC*, 2013 WL 12313348, at \*5 (S.D. Cal. 2013) (explaining third parties' "intent and knowledge [was] not

DAVIS WRIGHT TREMAINE LLP

publicly available and may not be clear from the documents produced by other respondents, it is relevant and discoverable information that may only be procured from [the third parties].").

Here, Instacart said it partnered with "over 2,200 retail banners" as of 2025, meaning it has price and availability data involving hundreds of third-party retailers beyond the limited number Amazon subpoenaed in this case. *See* Mot. at 3. Compared to other retailers, Instacart is also uniquely relevant because it, like Amazon, "allows third parties [to] sell products for delivery to consumers." *See* Dkt. 1-9 at 1–2. While Amazon has subpoenaed other third parties, Instacart's unique information is still directly relevant to Plaintiffs' claims in the SAC, and importantly, "is critical to Amazon's defenses." *See* Dkt. 1-13 at 5.

Further, Instacart acknowledges that prices on its platform may differ from retailers' in-store prices and that Instacart applies its own coupons, discounts, fees, and other charges. *See supra* § II.C(3). Instacart also possesses its GTV data for products that were sold on its platform, which includes the actual prices customers paid for products listed on Instacart's platform after applicable taxes and fees. *See id.* Instacart has not explained how any particular subpoenaed third-party would be able to produce the same price and availability information Instacart possesses. Nor does Instacart dispute that it possesses additional information for hundreds of third parties Amazon has not subpoenaed in this case.

Instacart muddles the Subpoena's requests to argue retailers are the "proper" source of the Subpoena's requested information. Mot. at 16. Instacart cites *Pebble Ltd. Partnership v. Environmental Protection Agency*, 310 F.R.D. 575, 582 (D. Alaska 2015) for the proposition that a substantial need for information cannot exist when a more convenient source exists. Mot. at 12. Instacart repeatedly states "Amazon has already obtained 860 gigabytes worth of the information it seeks directly from retailers," Mot. at 3, 7, 13, 15, 18, but fails to demonstrate this information would be identical to the information the Subpoena seeks from Instacart. *See generally* Mot. Instacart also fails to address that Amazon subpoenaed approximately 150 third parties— substantially less than the "2,200 retail banners" with "nearly 100,000 individual store locations" Instacart purports to support on its platform. Mot. at 3.

19

DAVIS WRIGHT TREMAINE LLP

Instacart stated it was a safe—*available*—resource for consumer goods and food items during the Pandemic. Valera Decl., Ex. H at 2. But Instacart argues that it is exempt from discovery in this case because—in its view—it is not a "retailer," Mot. at 4–5, based on Judge Lasnik's statement in the Aldi Order that "Amazon's defense turns on the price at which the *retailer* offered the same or similar goods." Mot. at 16. That argument makes no sense. Price and availability data are of critical relevance—including for Amazon's ability to demonstrate the reasonable avoidability of Plaintiffs' alleged injuries—and it does not matter if that data comes from a "retailer" or a platform that hosts "retailers."

As Judge Lasnik explained, "[i]f [a plaintiff] could have safely purchased basmati rice at Aldi for less than what she paid for jasmati rice on Amazon . . . that fact would inform the jury's determination of whether plaintiff could reasonably have avoided the injury of which she complains." Dkt. 1-13 at 4. What matters is that Instacart possesses a vast trove of price and availability data for products sold on its platform. Dkt. 1-9 at 1–2. It also does not matter that Instacart does not set all the prices on its platform; it has stated that prices on its platform may differ from those in stores and that its own promotions may have affected the price customers pay for consumer goods and food items during the Subpoena's relevant time period. *See* Valera Decl., Ex. I at 1.

Finally, Instacart misleadingly contends that Amazon seeks information related to its *costs*. *See* Mot. at 16–17. Amazon *does not seek cost data*; it *only* seeks information about the price consumers would have paid for available consumer goods and food items. Mot. at 16; *see also* Dkt. 1-9 at 2 (Amazon does not seek '"all transaction data'"). Instacart cannot dispute that it is the most convenient source for this information—whether or not it considers itself a "retailer." Again, Judge Lasnik already determined that "[t]his information is critical to Amazon's defenses[.]" Dkt. 1-13 at 5.

### 4.    Instacart's confidentiality objections are meritless.

Instacart argues that the Subpoena requires it to produce "highly sensitive data to a direct competitor[.]" Mot. at 18. This argument fails for at least two reasons:

20

AMAZON'S OPP. TO INSTACART'S MOT. TO QUASH AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT

DAVIS WRIGHT TREMAINE LLP

*First*, Instacart must show that the requested information is a trade secret or confidential commercial information for the protections under Rule 45(d)(3)(B). *In re Subpoena of DJO*, 295 F.R.D. at 497. It does not. Instead, Instacart argues—without a declaration—that the Subpoena "undoubtedly seek[s]" information that is a "direct competitive risk" as well as broad categories of information, including "consumer behavior and demand patterns, supply chain intelligence, and more." Mot. at 18–19. But Amazon has limited the Subpoena to seek only information related to the price and availability of consumer goods and food items during a period *ending four years ago*—all public information at the time—consistent with Judge Lasnik's Aldi Order. Dkt. 1-13 at 5. Stale publicly-available pricing data is not confidential.

*Second*, the existing protective order in *Steinberg* allows Instacart to produce information under an "Attorneys' Eyes Only" designation, negating its confidentiality or competition concerns. Valera Decl., Ex. Q. *See AFMS LLC v. United Parcel Serv. Co.*, 2012 WL 3112000, at *7 (S.D. Cal. 2012) (an existing protective order was sufficient to protect a responding party's trade secrets). Notably, other third parties have produced information to Amazon using the applicable protective order's designations. Valera Decl. ¶ 28.

### D.    The Court Should Grant Amazon's Cross-Motion to Compel Compliance with the Narrowed Subpoena.

"At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. Rule 45(d)(2)(B)(i).[7] "The scope of discovery through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b)." *Erickson v. Builder Advisor Grp. LLC*, 2022 WL 1265823, at *2 (N.D. Cal. 2022). Rule 26 permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. Rule 26(b)(1). In

---

[7] Amazon maintains that the WDWA, not this Court, is the court of compliance under Rule 45.

21

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

addition to the broad scope of relevancy during discovery, courts should be particularly permissive about relevance when—like here—the court's "only connection with a case is supervision of discovery ancillary to an action in another district." *See In re Kaiser Found. Health Plan Inc.*, 2026 WL 381630, at *2 (N.D. Cal. 2026) (citation omitted). Amazon moves the Court to compel Instacart's production of information that Judge Lasnik has already held is "critical" to its defenses in the underlying lawsuit. Dkt. 1-13 at 5.

### 1.    Amazon narrowed the relevant Subpoena requests.

Amazon requests Instacart's production of documents sufficient to show the price and availability of the "consumer goods and food items" sold on Instacart's platform between January 31, 2020, and October 20, 2022, in response to Subpoena Request Nos. 13 and 17. *See* Dkt. 1-3. Amazon does not seek to compel Instacart's production of documents in response to the Subpoena's other Requests. These requests were initially served to Instacart as follows:

> 13.    Transactional data for Purchases of Your consumer goods and food items or consumer goods and food items sold by third-parties on your website made between January 1, 2017 and the present sufficient to show, at least, (i) products sold, (ii) transaction date and time, (iii) SKU, (iv) price, (v) any applicable discount, (vi) identity of the purchaser, (vii) identity of the seller, to the extent that the consumer goods or food items were sold by a third-party on your website, (viii) geographic location of the purchaser and/or the store location from which the purchase was made, (ix) margin, (x) cost of acquisition, (xi) shipping cost, (xii) whether the product is new or used, and (xiii) mode of purchase, *e.g.*, whether the purchase was made in-store by the consumer, through a delivery app, through Your website for pickup, or online.

> 17.    All data for Your discount offers on consumer goods and food items between January 1, 2017 and the present, in store and online.

Dkt. 1-3 at ECF pp. 11–12. As discussed above, Amazon has significantly modified these requests, including to conform with Judge Lasnik's relevant discovery orders. *Supra* § IV.C(2). Specifically, Amazon (1) narrowed the Requests' relevant time period to January 31, 2020, and October 20, 2022, and (2) modified its Requests to conform to Judge Lasnik's Aldi Order. *See* Dkt. 1-13. Amazon's subsequent communications to Instacart clarified that Amazon only seeks price and availability data, leaving it to Instacart to propose a reasonable means of providing those data (with transaction-level data merely being a suggested option). *See* Dkt. 1-11 at 1–2; Dkt. 1-9 at 2.

22

DAVIS WRIGHT TREMAINE LLP

Instacart served its responses and objections dated January 17, 2025 to Amazon, Dkt. 1-6, and its most recent objections and responses are discussed in its Motion. Instacart has not agreed to provide *any* documents or data to Amazon, let alone produced anything. *See* Dkt. 1-9 at 2; Dkt. 1-11 at 2. It has not even made a compromise proposal. *Id.*

### 2. The Subpoena seeks relevant, unique, and proportionate information critical to Amazon's defenses.

As discussed in detail, above, the Subpoena's Requests Nos. 13 and 17 seek allowable discovery under Rule 26(b), including on the price and availability of consumer goods and food items. *See supra* § IV.C. Further, the Subpoena's Requests conform to the "proportionality and other requirements of Fed. R. Civ. P. 26(b)(2)[.]" Civil L.R. 37-2.

***First***, it is uncontested that the Subpoena seeks relevant information from Instacart regarding the price and availability of consumer goods and food items sold on its platform during the relevant time period. *Supra* § IV.C(1). *See* Dkt. 1-10 at 3; Mot. at 8.

***Second***, Instacart fails to articulate how the Subpoena's Requests Nos. 13 and 17—as Amazon modified those requests in subsequent communications and meet and confers with Instacart—are unduly burdensome. *See* Dkt. 1-9 at 1–2 (narrowing the Subpoena); Dkt. 1-11 at 2 (same). Instead, Instacart concedes in its declaration that this information exists but would require processing and time to produce. *See* Dkt. 1-1 ¶¶ 4-5 (discussing Instacart's transaction information database); *supra* § IV.C(2). Instacart does not identify any specific costs for its alleged undue burden, nor explicitly state whether it is able—or not—to provide information that could show the price and availability. *See generally* Dkt. 1-1.

***Third***, Amazon's substantial need for data requested in Requests Nos. 13 and 17 overcomes Instacart's concerns regarding confidentiality and competitiveness. *See supra* § IV.C(3). Again, Amazon seeks information "critical" to its defenses from Instacart, a company that made consumer goods and food items widely—and safely—available to consumers during the Pandemic. *See* Dkt. 1-13 at 4 ("If Ms. King could have safely purchased basmati rice at Aldi for less than what she paid . . . on Amazon, that fact would inform . . . whether plaintiff could reasonably have . . . of which she complains."). Furthermore, a stipulated protective order has

23

been entered in the underlying lawsuit, including an "Attorneys' Eyes Only" designation. *Supra* § IV.C(4).

*Fourth*, Requests Nos. 13 and 17 seek Instacart's unique price and availability information. *Supra* § II.C; IV.C(3). Instacart has price and availability data that *only* it could possess. *See supra* § IV.C(3). Instacart has never explained how retailers who sold consumer goods and food items on its platform would have the final price a consumer paid on its platform. *Supra* § IV.C(3); Dkt. 1-7 at ECF pp. 6–7 (requesting Instacart explain why retailers would have gross transaction cost information after taxes and fees). Instacart cannot counter that the requested information is unique to Instacart—it is neither duplicative nor cumulative of the information collected directly from Amazon's other third-party retailers. *Supra* § IV.C(3).

The Subpoena's Requests Nos. 13 and 17 are therefore within the appropriate scope for Rule 26(b), including for requests to a third-party, and the Court should compel Instacart's production of their requested information and data.

## V.    CONCLUSION

For the above reasons, the Court should deny Instacart's Motion as filed in the wrong court, or alternatively, transfer to the WDWA—the court that issued the Subpoena and the court of Subpoena compliance. If the Court reaches the merits, it should deny Instacart's Motion and grant Amazon's cross-motion, compelling Instacart to produce data sufficient to show price and availability of all "consumer goods" or "food items" sold on Instacart's platform from January 31, 2020 through October 20, 2022 (responsive to Subpoena Request Nos. 13 and 17).

DATED: May 29, 2026                              DAVIS WRIGHT TREMAINE LLP


                                                 By:   */s/ John D. Freed*
                                                       John D. Freed

                                                 Attorneys for Respondent
                                                 AMAZON.COM, INC.

DAVIS WRIGHT TREMAINE LLP

AMAZON'S OPP. TO INSTACART'S MOT. TO QUASH AND CROSS-MOT. TO COMPEL SUBPOENA
Case No. 3:26-mc-80136-TLT